# **EXHIBIT 4**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

---

JENNIFER HARDING, JASMINE POGUE, OMEGA TAYLOR, LOUISIANA STATE CONFERENCE OF THE NAACP, and POWER COALITION FOR EQUITY AND JUSTICE,

    *Plaintiffs*,

v.

JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana, and KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana.

    *Defendants*.

Case. No. 3:20-cv-00495--SDD-RLB

---

## DECLARATION OF JENNIFER HARDING

JENNIFER HARDING declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am over 42 years old and competent to make this declaration.

2. I am a U.S. citizen, and a lawfully registered Louisiana voter. I have never lost my right to vote by reason of a felony conviction or court order.

3. I live in Baton Rouge, Louisiana, where I work as a community organizer for a nonprofit organization committed to the restoration of civil and human rights for formerly incarcerated people. I also volunteer with a grassroots community advocacy organization dedicated to civic engagement and the protection of civil rights.

4. I live with my husband and son. My son is beginning the fifth grade. As a family, we have been strictly social distancing since schools closed in Louisiana in March in order to protect our health and the health of others. During this period, I have worked from home and facilitated at-home learning for my son. Before learning that the new school year for the public

schools in East Baton Rouge Parish would begin with remote learning, I was prepared to homeschool my son to avoid his risk of exposure to COVID-19 in a school setting.

5. I am part of the "sandwich generation," meaning I, like many others in the same stage of life, balance both childcare and eldercare responsibilities. While raising my son, I also provide support for my parents and grandmother, who live close by and require various levels of assistance.

6. My father is 72 years old and has Parkinson's disease. My mother, who is 71 years old, has limited mobility due to post-polio syndrome and surgery she underwent recently. My 93-year-old grandmother has been diagnosed with dementia. I am responsible for regularly completing tasks that they cannot easily perform, including cooking, cleaning, and taking out the trash.

7. I do not serve as a fulltime, live-in caretaker for my parents and grandmother. However, this spring they made the decision to let their part-time, in-home caretaker go due to concerns about COVID-19 and the caretaker's exposure to other patients she assists throughout the week. I have since assumed several of her duties.

8. Due to my parents' and grandmother's age and medical conditions, I am particularly worried about their vulnerability to COVID-19. I am aware of the correlations between age and morbidity from the virus, especially among those over 65 years of age. I am also aware that younger, healthy people may be "silent carriers" of the virus, capable of asymptomatic contraction and transmission. I fear if I contracted the virus, even unknowingly, I could put my parents and grandmother at acute risk.

9. Beyond care visits to my parents' and grandmother's home, I have only left my house for limited purposes since the COVID-19 pandemic reached Louisiana. These outings have

included, for example, taking a walk in my immediate neighborhood, attending discrete outdoor events for work where social distancing has been enforced, and shopping at grocery stores where distancing and masks are required. When visiting my parents' and grandmother's home to complete discrete tasks, I am careful to maintain distance and use sanitary practices.

10. If able, I would vote by absentee mail-in ballot in order to eliminate the chance of exposure to COVID-19 at my polling location—both inside and while waiting in line to vote. However, Louisiana law does not permit me to vote by mail. Further, no version of an emergency plan has been proposed for the November or December elections that would provide that option to me or other voters in similar caretaking roles.

11. On April 15 and April 22, 2020, I watched the Louisiana Senate and House committee meetings regarding the proposed emergency election plans for the July and August elections. I am aware that the First Emergency Plan, presented on April 15, expanded the reasons to request an absentee ballot and included an excuse that would allow any voter who was concerned about exposure or transmission of COVID-19 to request a ballot. I am also aware that the changes that were made between the introduction of the First Emergency Plan and the passage of the Revised Emergency Plan drastically reduced the accepted reasons for voting absentee, omitting the broadest categories that would allow for mail-in voting due to COVID-19 concerns.

12. Among the remaining excuses permitted under the Revised Emergency Plan, the COVID-19 emergency absentee ballot application allowed voters "caring for" a specifically named individual who is "subject to a medically necessary quarantine or isolation order as a result of COVID-19 or who has been advised by a health care provider to self-quarantine due to COVID-19 concerns," to request an absentee ballot. I was not confident that this definition applied to me when the plan was passed and remained uncertain after failed attempts to gain guidance from

election officials in advance of the July election.

13. I am not a fulltime caretaker for my parents or grandmother. I do not live with them. I do not provide medical care for them, though I am often called to assist when my father falls and requires bandaging or a ride to the emergency room. While my parents and grandmother are following general health guidance to maintain social distancing and are at increased risk of medical complications due to their underlying conditions, they are not under direct doctor's orders to stay home. These factors made me unsure that my situation fell within the definition of caretaking contemplated within the Emergency Plan for the July and August elections. Further, I could not find any public guidance from state or parish election officials to help me interpret the terms of the qualification and was unable to obtain individualized guidance upon request to these officials.

14. In separate action previously ruled on, this Court stated that my status as a caretaker for family members who are "subject to a medically necessary quarantine or isolation order as a result of COVID-19," would have likely made me eligible to vote absentee under the July and August Emergency Plan's COVID-19-related excuses. *See* June 22 Ruling at 18 (recognizing that "the state's expanded virus-related excuses appear to accommodate that preference"). However, through my counsel, I attempted to confirm that the State regarded me as eligible to vote by absentee ballot under the Emergency Plan's COVID-19-related excuses. Defendant Ardoin's counsel and counsel for the East Baton Rouge Parish Registrar refused to clarify or confirm the State's view of the law. They would not attest that I could submit an application to receive an absentee ballot under the July/August Emergency Plan's COVID-19-related excuses without threat of prosecution for false affirmations regarding my eligibility.

15. While the qualifications to vote absentee were vaguely worded on the absentee

ballot request application, the criminal liabilities for making false statements were listed in large, bold font: a fine of up to $2,000 and "imprisonment, with or without hard labor" for up to two years. These harsh penalties for improperly filling out and submitting an absentee ballot request application discouraged me from applying for an absentee ballot, and I was forced to vote in person during the July 11, 2020 Presidential Preference and Municipal Primary Elections and the August 15, 2020 Municipal General Elections.

16. My voting experience in July was uncomfortable and unsafe based on my understanding of public health guidance about COVID-19. When I arrived, there were three poll workers wearing PPE and sitting together at a table. They were seated close to one another, clearly not six feet apart. The arrangement of the sign-in table did not allow me to maintain six-feet of distance from the poll workers. I brought my own pen to avoid contamination from touching a pen that other voters or poll workers had handled. However, because it was not blue ink, I was instructed that I had to use the communal pen offered. I was not offered any protective hand or finger covering to hold the pen to sign-in or touch the voting machine to cast my vote. I was not able to witness anyone sanitize the pen or the voting machines, which were behind a curtain.

17. At the time I cast my ballot, there appeared to be fewer than ten people at my polling site, and I was still unable to maintain the level of distance and standard of sanitary practices that would have made me feel safe based on my understanding of public health guidelines. During the 2012 and 2016 presidential elections, I also voted in person and recall my voting location being even more congested. Based on these past experiences, I believe that my polling site will be more crowded during a higher turnout election.

18. On August 11, 2020, I returned to my polling site to vote in the Municipal General Elections. Again, it was not possible to abide by all CDC guidance. The poll workers were again

seated close to one another at the check-in table. Around the room, polling site staff wore varying amounts of PPE: some wore gloves, while others did not. One did not wear a mask. Most of the workers did not wear gowns or face shields. I did not see hand sanitizer available and was not offered any finger covering or protective gear to avoid direct contact with the voting machine or communal surfaces.

19. I intend to vote in the November and December elections but fear that my exposure to other people at my polling site puts my health and the health of my family at risk. As cases of the coronavirus continue to spread, I know that I would be unable to cast a ballot in person if I or my family members had symptoms or a confirmed case of COVID-19 during early voting or on Election Day because I would need to self-isolate. And, even if I remain asymptomatic, the process of voting in person increases my risk of exposure, contraction, or transmission to my immediate family and my high-risk parents and grandmother.

20. I would unequivocally vote by mail if provided the opportunity in order to avoid the risk and stress associated with voting in person during the ongoing pandemic. Yet if the limitations on absentee eligibility stay in effect, my only option to vote in the November and December elections will require jeopardizing my health, the health of my family, and the safety of my community by voting in person.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 20, 2020

_____
Jennifer Harding