## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Jennifer Harding, *et al.,* | |
| Plaintiffs, | |
| v. | |
| John Bel Edwards, the Governor of the State of Louisiana, in his Official Capacity, *et al.,* | |
| Defendants, | Civil Action: 3:20-cv-495 |
| and | |
| The State of Louisiana, | |
| Defendant-Intervenor. | |

### DEFENDANT-INTERVENOR THE STATE OF LOUISIANA AND DEFENDANT SECRETARY OF STATE'S JOINT MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION TO DISMISS

Intervenor-Defendant Jeff Landry, in his official capacity as Attorney General of Louisiana, on behalf of the State of Louisiana, and Kyle Ardoin, in his official capacity as Louisiana Secretary of State, hereby move to dismiss Plaintiffs' Complaint for the following reasons: (1) The Court lacks subject matter jurisdiction because Plaintiffs' claims present non-justiciable political questions and Plaintiffs lack Article III standing; (2) Plaintiffs fail to state claims upon which relief can be granted because a communicable disease is not state action and is not protected by the Voting Rights Act; (3) Plaintiffs fail to state a claim upon which relief can be granted because they have not sufficiently plead their new claims regarding the Americans with Disabilities Act ("ADA"); (4) any Court order will result in electoral chaos in violation of the *Purcell* doctrine; and (5) Plaintiffs have failed to join the proper parties.

1

## **INTRODUCTION**

Plaintiffs bring yet another challenge on the eve of an already complicated election season attempting to foist what they believe to be a "fairer" election system upon Louisiana in light of the current pandemic. Plaintiffs bring their challenge despite the constantly changing circumstances of the pandemic, to which the State is attempting to respond in real time by, among other things, developing guidance clarifying Louisiana law as well as making it easier and safer to vote.

Just two months ago, this Court dismissed nearly identical claims from Plaintiffs concerning the July and August elections. *Clark v. Edwards*, No. 3:20-cv-308-SDD-RLB, 2020 U.S. Dist. LEXIS 108714 (M.D. La. June 22, 2020) ("Power Coalition 1"). In that case, Plaintiffs challenged Louisiana's previous EEP. *Id*. at *1-5. This Court granted the State's Motion to Dismiss because Plaintiffs' asserted harms were hypothetical, speculative, and insufficiently concrete. *Id*. at *19-50. In the short time since the dismissal of their previous claims, nothing has made Plaintiffs' harms any more concrete. Of the five Plaintiffs in the present case, four were Plaintiffs in the previous litigation. Nothing indicates that Plaintiffs are in substantially different positions than they were only weeks ago for standing purposes. Indeed, the only additional Plaintiff in the present case from the previous suit is Omega Taylor. Plaintiff Omega Taylor is similarly situated to the individual plaintiffs of the previous case, whom this Court found lacked standing. Compare *id*. at *15-35 to Amended Compl. ¶ 24. Additionally, the United States Court of Appeals for the Fifth Circuit recently addressed claims very similar to the claims here. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020). The reasoning of the Fifth Circuit is extremely persuasive, even controlling, here.[1]

---

[1] The Supreme Court has clearly signaled that in most instances federal courts should defer to the political branches of state government with respect to Virus-related actions. The Supreme Court has issued stays, or refused to vacate stays, in at least six matters where federal courts have acted to alter a state's election rules in light of the Virus. *See, e.g.*, *Republican National Committee v. Democratic National Committee*, No. 19A1016 (Apr. 6, 2020) (granting stay

Plaintiffs' Amended Complaint is fundamentally deficient. At the outset, voting by absentee ballot is not a right. *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807-09 (1969); *Power Coaltion 1*, 2020 U.S. Dist. LEXIS 108714 at \*6. Louisiana's laws setting forth absentee voting procedures are "designed to make voting more available to some groups who cannot easily get to the polls." *Id.* at 807-08; *see also Tex. Democratic Party*, 961 F.3d at 403-04. This fact "does not itself 'deny' the [P]laintiffs 'the exercise of the franchise.'" *Id.*; *see also Tex. Democratic Party*, 961 F.3d at 404.[2]

Beyond the fundamental lack of a right to vote absentee, there are two other inescapable circumstances that cause Plaintiffs' claims to fail. Each and every claim brought by Plaintiffs requires *state* action. However, the face of their Amended Complaint is clear: it is the Virus and not Louisiana that caused their alleged harms. *See Power Coalition 1*, 2020 U.S. Dist. LEXIS 108714 at \*9 ("The risk presented by the Virus is the *raison d'etre* of Plaintiffs' lawsuit; however sliced, Plaintiffs' alleged injury in inextricable from that risk.").

Plaintiffs' Amended Complaint adds a new claim under the ADA, which is without merit and destined to fail, just as their constitutional claims. First, Plaintiffs fail to make out a *prima facie* case of discrimination under the ADA because they do not have ADA-recognized disabilities,

---

of district court order requiring Wisconsin to count late postmarked absentee ballots for primary election, pending final disposition on appeal); *Merrill v. People First Of Alabama*, No. 19A1063 (July 2, 2020) (granting stay where district court order enjoined Alabama's duly enacted photo identification and witness requirements for absentee voting during the pandemic as unconstitutional and violative of the ADA); *Little v. Reclaim Idaho*, No. 20A18 (July 30, 2020) (granting stay of district court orders relaxing Idaho's rules for ballot initiatives); *Clarno v. People Not Politicians*, No. 20A21 (Aug. 11, 2020) (granting stay of district court order relaxing Oregon's election procedures because of the coronavirus pandemic); *Thompson v. DeWine*, No. 19A1054 (June 25, 2020) (denying application to vacate Sixth Circuit stay of district court order suspending Ohio's enforcement of in-person signature requirements and extending filing deadlines for initiative campaigns); *Texas Democratic Party v. Abbott*, No. 19A1055 (June 26, 2020) (denying application to vacate Fifth Circuit stay of district court order forcing Texas to implement no-excuse absentee voting). The Supreme Court has also denied relief in a number of cases where litigants have sought to challenge various actions of states to deal with non-election related actions related to the Virus. *See, e.g., South Bay United Pentecostal Church v. Newsom*, No. 19A1044 (May 29, 2020); *Calvary Chapel Dayton Valley v. Sisolak*, No. 19A1070 (July 24, 2020).

[2] Louisiana's actions also do not and cannot result in a desperate impact under Section 2 of the Voting Right Act.

they do not meet the essential eligibility requirements to vote absentee, and they are not excluded by reason of their "disabilities," or at all. Further, Plaintiffs' requested relief works a "fundamental alteration" to Louisiana's absentee voting system and constitutes and unreasonable modification of Louisiana's absentee voting process.

Given these inescapable circumstances, Plaintiffs' claims must be dismissed yet again.

## I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION.

"Federal courts cannot consider the merits of a case unless it 'presents an actual controversy, as required by Article III of the Constitution . . .'" *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (quoting *Steffel v. Thompson*, 415 U.S. 452, 458 (1974)). "The many doctrines that have fleshed out the case or controversy requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper— and properly limited—role of the courts in a democratic society.'" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Plaintiffs' Amended Complaint is facially and factually deficient in nearly every respect. However, the principal defects are jurisdictional in nature and require this Court's immediate dismissal.

### A.      Plaintiffs Lack Standing.

"Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'" *Rucho v. Common Cause*, 139 S. Ct. 2484, 2493 (2019). The doctrine of standing arises out of the "case" or "controversy" language of Article III. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "Relaxation of standing requirements is directly related to the expansion of judicial power." *Id.* at 408-09 (quoting

*United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring)).

In *Gill v. Whitford*, the Supreme Court "insist[ed]" that a plaintiff must show that they "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial opinion." 138 S. Ct. 1916, 1929 (2018). "The party invoking federal jurisdiction bears the burden of establishing [the three elements of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, Plaintiffs have failed to meet their burden to establish Article III standing. Accordingly, their claims must be dismissed.

### 1. Plaintiffs Have Not Suffered an Injury in Fact.[3]

Foremost among a plaintiff's burdens in establishing Article III standing is pleading and proving an injury in fact. *Gill*, 138 S. Ct. at 1929. In order to prove an injury in fact sufficient to establish Article III standing, a plaintiff must plead and prove an injury which is "concrete, particularized, and actual or imminent". *Clapper*, 568 U.S. at 409 (internal quotations omitted). The requirement that an injury be "imminent" exists "to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* (quoting *Lujan*, 504 U.S. at 565, n.2) (emphasis in original). The Supreme Court has repeatedly reiterated that a "'threatened injury'—such as Plaintiffs are alleging here—"must be *certainly impending* to constitute injury in fact' and that '[a]llegations of *possible* future injury' are not sufficient" to establish Article III standing. *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original). A plaintiff cannot sufficiently establish an injury in fact when the alleged injury is based on "their fears of hypothetical future harm that is not certainly impending". *Id.* at

---

[3] The presentation of this case is peculiar in that Plaintiffs are alleging purely conjectural harms that stem not from the state, but from a virus, and as such are neither traceable nor redressable by Defendants. However, even if one were to remove COVID-19 from the equation, there is every reason to believe that Plaintiffs would still lack individual and associational standing. *See, e.g., Gill*, 138 S. Ct. at 1929 ("[A] person's right to vote is individual and personal in nature." (internal quotation omitted)); *NAACP v. City of Kyle*, 626 F.3d 233 (5th Cir. 2010) (holding, in part, that organizations and associations must meet *Lujan's* standing requirements).

416.

Plaintiffs' alleged injuries are not "actual or imminent" and therefore their claims must fail.[4] *Clapper*, 568 U.S. at 409. Here, Plaintiffs allege that "[i]n the context of the COVID-19 pandemic", Louisiana voters suffered a sufficient injury in fact due to the *potential* "risk of infection and death" by *possibly* coming in contact with the Virus through the act of physically voting. *See* Amended Compl. ¶¶ 27, 108 (ECF No. 22). Dr. Anthony Fauci, the director of the National Institute of Allergy and Infectious Diseases, whom Plaintiffs repeatedly rely upon in their Amended Complaint, has stated publicly that there is no reason why in person voting cannot take place so long as voters take sufficient precautions. David Sherfinski, *Dr. Anthony Fauci: No reason why we shouldn't be able to vote in person*, The Washington Times (Aug. 13, 2020), https://www.washingtontimes.com/news/2020/aug/13/anthony-fauci-no-reason-why-we-shouldnt-be-able-vo/.[5] Moreover, a general claim that the Virus may cause harm to someone does not assert a claim of actual or imminent harm to these particular plaintiffs.

The estimated population of Louisiana is 4,648,794.[6] According to the Centers for Disease Control and Prevention ("CDC"), Louisiana has had a total of 148,894 Virus cases as of September 1, 2020.[7] While not diminishing the seriousness of the disease to those infected, a total infection rate of roughly three percent cannot be classified as "certainly impending." *See Power Coalition*

---

[4] It is also important to note that voting by absentee ballot is not a fundamental right. *See McDonald*, 394 U.S. at 807-09. When a state legislature passes laws that permit certain voters to vote absentee but not others, such laws cannot be viewed as an "abridgment" of one's right. *Veasy v. Abbott*, 830 F.3d 216, 279 (5th Cir. 2016) (Higginson, J. concurring). "There is a difference between making voting *harder* in ways that interact with historical and social conditions to disproportionately burden minorities and making voting *easier* in ways that may not benefit all demographics equally (like motor-voter)." *Id.* (emphasis in original). "Every decision that a State makes in regulating its elections will, inevitably, result in somewhat more inconvenience for some voters than for others." *Greater Brimmingham Ministries v. Merrill*, 284 F. Supp. 3d 1253, 1279-81 (N.D. Ala 2018) (citing *Frank v. Walker*, 768 F.3d 744, 754 (7th Cir. 2014)).

[5] When a party is challenging the facts upon which jurisdiction depends, matters outside the pleadings can be considered. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[6] *QuickFacts: Louisiana*, U.S. Census Bureau (last accessed Sep. 1, 2020), https://www.census.gov/quickfacts/LA

[7] *Cases in the U.S.*, Center for Disease Control and Prevention (last accessed Sep. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

*1*, 2020 U.S. Dist. LEXIS 108714 at 24 ("In a state with 2.9 million registered voters and 48,634 confirmed cases of the Virus, the 'chain of possibilities' is too remote – not certainly impending – and speculative."). Furthermore, the vast majority of the total number of virus cases in Louisiana (127,918) have recovered or are presumed recovered, with only roughly 20,976 active cases as of September 1, 2020.[8] Louisiana has been in Phase 2 of the reopening process since June 5, 2020, but it is pure speculation to guess what phase Louisiana may be in as the November and December elections approach.[9] In moving from Phase 1 to Phase 2, Governor John Del Edwards cited to "continued improvement in Louisiana's COVID-19 outlook and a significant increase in testing capacity and contact tracing" in support of the move. *Id.* While Louisiana health officials allow for most businesses, including children's museums and arcades, to open safely (following occupancy and other guidelines), Plaintiffs argue that voting centers, following the same guidelines, cannot possibly operate safely. *Id.*

In support of their baseless allegations that voting in accordance with Louisiana law will lead to Virus infection, Plaintiffs cite to a number of media reports that claim Wisconsin suffered higher infection rates following their Primary election. Amended Compl. ¶ 73. However, these reports are exaggerated if not outright false. At least one study has been published as an article, and at least one other published as a "pre-print" evaluating the Wisconsin election's impact on the spread of the Virus. These two research studies show no such effect. The first is titled "No

---

[8] Louisiana Department of Health, *Louisiana Coronavirus (COVID-19) Information* (last accessed Sep. 1, 2020), https://ldh.la.gov/Coronavirus/.
[9] Mark Ballard, *What if Louisiana remains in Phase 2 during Nov. 3 election? There's an emergency plan for that,* The Advocate (Aug. 5, 2020), https://www.theadvocate.com/baton_rouge/news/politics/elections/article_00cdc07e-d761-11ea-a7df-5b1e1da95b98.html; *Gov. Edwards Announces Louisiana's Roadmap to Resilience Will Start Phase 2 on Friday, June 5,* Louisiana Office of the Governor (June 1, 2020), https://gov.louisiana.gov/index.cfm/newsroom/detail/2521.

Detectable Surge in SARS-CoV-2 Transmission due to the April 7, 2020 Wisconsin Election."[10]

That study concluded, "Taken together, it appears that voting in Wisconsin on April 7 was a low-risk activity." *Id.* A second study examining Wisconsin found that the Virus' rate of spread actually declined following the election, and declined in the three most populated counties in Wisconsin. That study is entitled "Wisconsin April 2020 Election Not Associated with Increase in COVID-19 Infection Rates."[11] The study concluded, "[t]here was no increase in COVID-19 new case daily rates observed for Wisconsin or its three largest counties following the election on April 7, 2020, as compared to the US, during the post-incubation period." *Id.* The CDC itself recently published a report showing that the Wisconsin elections in April – at the height of the pandemic – did not lead to an increase in Virus cases in Wisconsin.[12] The available data surrounding the recent Wisconsin election, coupled with the data supporting the move from Phase 1 to Phase 2 in Louisiana, show that the likelihood of infection with the Virus while voting is not "actual or imminent" or "certainly impending" but is merely a "fear[] of hypothetical future harm[]". *Clapper*, 568 U.S. at 409, 416. As Dr. Fauci has discussed recently, "if carefully done according to the guidelines, there's no reason that" people cannot vote in person. David Sherfinski, *Dr. Anthony Fauci: No reason why we shouldn't be able to vote in person*, The Washington Times (Aug. 13, 2020), https://www.washingtontimes.com/news/2020/aug/13/anthony-fauci-no-reason-why-we-shouldnt-be-able-vo/. "If you go and wear a mask, if you observe the physical distancing and don't have a crowded situation, there's no reason why you shouldn't be able [to vote in

---

[10] Kathy Leung et al., No Detectable Surge in SARS-CoV-2  Transmission due to  the  April 7,  2020  Wisconsin Election,         Vol.         110,         No.         8         AJPH         (Aug.         2020), https://ajph.aphapublications.org/doi/pdfplus/10.2105/AJPH.2020.305770.
[11] Andrew C. Berry et al., Wisconsin April 2020 Election Not Associated with Increase in COVID-19 Infection Rates, https://www.medrxiv.org/content/10.1101/2020.04.23.20074575v1.full.pdf
[12] Heather Paradis, *et al.*, *Notes from the Field: Public Health Efforts to Mitigate COVID-19 Transmission During the April 7, 2020, Election — City of Milwaukee, Wisconsin, March 13–May 5, 2020*, CDC (July 31, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6930a4.htm.

person]. . . . There's no reason why we shouldn't be able to vote, in person or otherwise." *Id.*

Plaintiffs' theory of injury is similar to the theory advanced unsuccessfully by the plaintiffs in *Clapper*. In *Clapper*, the plaintiffs argued that the Foreign Intelligence Surveillance Act of 1978 would allow the government to perform unconstitutional surveillance on them and sought a declaration of unconstitutionality and an injunction against the government performing surveillance authorized under the challenged law. 568 U.S. at 401. The *Clapper* plaintiffs claimed injury in fact and Article III standing because "there is an objectively reasonable likelihood that their communications will be acquired [by government surveillance] at some point in the future." *Id.* The Court rejected this theory of injury because the plaintiffs failed to allege or prove that their communications had been unconstitutionally monitored, and their fear of non-certain impending hypothetical future harm was insufficient to establish Article III standing. *Id.* at 411-416. Here, Plaintiffs attempt to argue injury in fact under a flawed theory similar to the *Clapper* plaintiffs— that by voting in person, Louisiana voters *will* suffer a sufficient injury in fact due to the *potential* "risk of infection and death" by *possibly* coming in contact with the Virus. *See* Amended Compl. ¶ 108. Here, just as in *Clapper*, because Plaintiffs' alleged injury is based on *uncertain possible* future harm, it must fail for the same reasons as the plaintiffs' claims in *Clapper*. To hold otherwise would be to allow for a nearly limitless range of possible speculative injuries that have not yet occurred and are never likely to occur. Article III exists to limit and define the power of the federal judiciary, not expand it. *See Clapper*, 568 U.S. at 408-09.

Here, as previously discussed by the Court, each Plaintiff asserts a different type of injury arising out of a different set of circumstances, all failing to confer Article III standing. *See Power Coalition 1*, 2020 U.S. Dist. LEXIS 108714 at 11 ("Under the United States Constitution Article I, § 4, 'The Times, Places and Manner of holding Elections for Senators and Representatives, shall

be prescribed in each State by the Legislature thereof.' Thus, this Court undertakes the standing analysis in this case with particular rigor, knowing that to justify potentially disruptive judicial intervention, the existence of an Article III case or controversy is especially vital. The injury-in-fact element is best assessed by reference to the specific Plaintiffs in this matter, each of whom asserts a different type of injury, arising out of a different set of circumstances.").

*Individual Plaintiffs*

The Individual Plaintiffs—Plaintiff Harding, Plaintiff Pogue, and Plaintiff Taylor—allege injury due to the fact that they believe they will not qualify for an absentee ballot under Louisiana law and that voting in person would subject them, their families, and their communities to a substantial and concrete risk of death or severe illness, and so it is impossible or extremely impractical for them to vote in person. Amended Compl. ¶¶ 22-24. As the Court stated only weeks ago, "the notion that the Excuse Requirement forces the Individual Plaintiffs to 'jeopardiz[e] [their] health and the health of [their] family and community by voting in person' is a conclusion that requires quite a few assumptions." *Power Coalition 1*, 2020 U.S. Dist. LEXIS 108714 at *24. While Individual Plaintiffs prefer to vote by absentee ballot due to the Virus, voting in person does not automatically pose a mortal risk. *See id*. at *16-21, *24-25. In this way, the Individual Plaintiffs' alleged injuries are reminiscent of the *Clapper* plaintiffs: they involve "multiple layers of assumptions." *Id*. at *19 (citing *Clapper*, 586 U.S. at 410); *See also id*. at *18-21, *24-25. "The gravamen of [their] asserted injury is fear of exposure to the Virus. Such fear is simply not enough to give rise to a 'certainly impending' injury. The instructions of Governor Edwards in his recent Proclamation make clear that, by taking precautions, even 'higher-risk' individuals can safely make contact with others." *Id*. at *21.

Of course, Individual Plaintiffs asserted nearly identical injury in the *Power Coalition 1*

Litigation, and claimed that if they voted in person they would certainly expose themselves to the Virus. *See id.* at *16-25. A review of public records indicates that all three of the Individual Plaintiffs voted in person for the July and August, 2020 elections.[13] Plaintiff Taylor even *worked at a polling place as Commissioner in Charge for the entire day for both elections*, willingly exposing herself to the polling place for hours. *See* Joint Opp. To Mot. Prelim. Inj. Ex. D; Ex. L. Plaintiffs apparently have not contracted the Virus or died as a result, despite their assertions to the contrary. Just as in the *Power Coalition 1* Litigation, Individual Plaintiffs' alleged injuries involve "a highly attenuated chain of possibilities, [and thus do] not satisfy the requirement that threatened injury must be certainly impending." *Id.* at *19 (citing *Clapper*, 568 U.S. at 410). As the Fifth Circuit put it in *Texas Democratic Party v. Abbott*,

> The Constitution is not offended simply because some groups find voting more convenient than do the plaintiffs because of a state's mail-in ballot rules. That is true even where voting in person may be extremely difficult, if not practically impossible, because of circumstances beyond the state's control, such as the presence of the Virus.

*Id.* at *25 (quoting *Tex. Democratic Party*, 961 F.3d at 405). Consequently, Individual Plaintiffs have not established an injury required to have standing before this Court and their claims should be dismissed.

*Organizational Plaintiffs*

The Organizational Plaintiffs—The Louisiana NAACP and Power Coalition—allege that they are harmed because they must divert resources to monitor and investigate the impact of the Louisiana's laws as well as engage in voter education about Louisiana's absentee ballot requirements. Amended Compl. ¶¶ 25-32.

---

[13] All Plaintiffs voted in person for the July and August 2020 elections. Plaintiff Taylor even worked at a polling place as Commissioner in Charge for the entire day for both elections, willingly exposing herself to the polling place for hours. *See* Harding Decl. ¶¶ 16-18; Pogue Decl. ¶¶ 13-15; Taylor Decl. ¶ 16, (PI Ex. 4-6); Opp. to PI Ex. D; Ex. L.

In the *Power Coalition 1* Litigation, the Court found that the Louisiana NAACP lacked an Article III injury because its alleged harm, that of "divert[ing] its limited resources to monitor and investigate the impact of the Challenged Provisions on its members, and . . . advocat[ing] for a modified [EEP] that considers the significant impact of the COVID-19 pandemic on Black Louisianans. . ." did not represent a significant diversion of resources away from its mission. *Power Coalition 1*, 2020 U.S. Dist. LEXIS 108714 *40-41. The Court went on to find that even if the Louisiana NAACP could show Article III injury, it still lacked standing because that injury would be traceable to the Virus and not Defendants. *Id*. The Court similarly found that Power Coalition lacked standing for reasons identical to those of the NAACP. *Id*. at *36-40. Nothing has magically conferred standing upon Organizational Plaintiffs in the short time between the *Power Coalition 1* Litigation and the *Power Coalition 2* Litigation.

The Organizational Plaintiffs also attempt to establish injury based on an associational standing theory. However, none of the organizations have specifically identified any of their members nor showed how they were specifically injured.[14] Aside from all alleged injuries being based on COVID-19 rather than state action, Organizational Plaintiffs have not shown any specific members that will be injured, and therefore they cannot rely on associational standing beyond the Individual Plaintiffs. *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010). Pointing to evidence "in the abstract" that some of their members may have difficulty voting based on the Virus, or may be unable to vote through their preferred method is insufficient to establish associational standing. *Id.*

> **2. Plaintiffs' Alleged Injuries are Neither Traceable to nor Redressable by Defendants.**

---

[14] Ms. Taylor is identified as a member of the NAACP, but her actions voting in person at both the July and August primaries AND working as a Commissioner in Charge at a polling place in her Parish for both primary elections substantially eviscerates any standing she might have had to be a proper Plaintiff in this case.

a.  *Because the Virus Is Not State Action, Plaintiffs' Alleged Injury Is Neither Traceable to nor Redressable by Defendants.*

Plaintiffs must also show that their alleged injury in fact is fairly traceable to the conduct of Defendants and that the injury is likely to be redressed by a favorable judicial opinion. *Lujan,* 504 U.S. at 560-61; *Gill*, 138 S. Ct. at 1929; *Spokeo, Inc.*, 136 S. Ct. at 1547. However, like their failure to present a proper injury in fact, Plaintiffs also fail to show that their alleged injury can be traced to Defendants or redressed by this Court.

It is important to note that Plaintiffs are not alleging the laws in question are unconstitutional or violative of the VRA and ADA writ large, but only *temporarily* due to the Virus. *See*, *e.g.*, Amended Compl. at 7. In effect, Plaintiffs' entire complaint hinges upon the Virus. *See*, *e.g.*, Amended Compl. at ¶¶ 7, 9, 12, 13 (allegations are generally prefaced or modified by language such as "[i]n the context of the COVID-19 pandemic" or other similar language). Plaintiffs' alleged injuries boil down to the claim that, "[i]n light of the COVID-19 pandemic," Louisiana voters suffer a sufficient injury due to the *potential* "risk of infection and death" by *possibly* coming in contact with the Virus through the act of voting in person. *See* Amended Compl. at ¶¶ 27, 108. Plaintiffs again allege potential harm to the general voting population. But, assuming *arguendo* that Plaintiffs properly claimed a sufficient and particularized injury in fact, which they did not, their alleged injury cannot be traced to Defendants for one simple reason: the existence and proliferation of the Virus is not state action.

Plaintiffs' claims fail because each and every claim requires *state* action. *Compare* Amended Compl. ¶¶ 48-50 (Counts I & II – "Violations of the Fundamental Right to Vote under the First and Fourteenth Amendments to the U.S. Constitution (42 U.S.C. § 1983)") *and* Amended Compl. ¶¶ 50-52 (Count III – "Violations of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301") *and* Amended Compl. ¶¶ 52-54 (Count IV - Failure to Provide Reasonable

Accommodations in Violation of Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131, *et seq.*) *with* U.S. Const. amend. I ("*Congress* shall make no law . . . ." (emphasis added)); U.S. Const. amend. XIV ("No *state* shall make any law . . . nor shall any *state* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (emphasis added)); 42 U.S.C. § 1983 ("Every person who, *under color of any statute*, ordinance, regulation, custom, or usage, *of any state* . . . ." (emphasis added)); Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 ("No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied *by any State* . . . ." (emphasis added)); 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any *such entity*."; 42 U.S.C. § 12131(1) (A "public entity" is "any State or local government [or] any department, agency . . . or other instrumentality of a State or States or local government.") The Virus is not state action. *Tex. Democratic Party,* 961 F.3d at 405 (finding that "the Constitution is not offended" even if voting is impossible "because of circumstances beyond the state's control, such as the presence of the Virus."); *Coalition v. Raffensperger*, No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *9 n.2 (N.D. Ga. 2020).

Moreover, for every single law Plaintiffs challenge, there is a more or equally "restrictive" version of that law that was perfectly lawful before the Virus. To that end, an otherwise constitutional (or statutorily compliant) law is not made less constitutional (or compliant) by non-state action such as the Virus. *See*, *e.g*, *Bethea v. Deal*, No. CV216-140, 2016 U.S. Dist. LEXIS 144861, at *7 (S.D. Ga. 2016); *Mays v. Thurston,,* No. 4:20-cv-341 (JM), 2020 U.S. Dist. LEXIS 54498, at *4-5 (E.D. Ark. 2020).

States throughout the country have taken measures to protect "the right to vote during this global pandemic" by taking actions including "suspending the normal prerequisites . . . for requesting an absentee ballot" and encouraging "social distancing and other protections" while voting in person. *Mays*, No. 4:20-cv-341 (JM), 2020 U.S. Dist. LEXIS 54498 at *4-5. Louisiana did so for the previous elections with the last EEP and has continued to react with new guidance.[15]

With that backdrop, "[t]he real problem [for Plaintiffs] here is COVID-19, which all but the craziest conspiracy theorist would concede is not the result of any act or failure to act by the Government." *Coalition*, No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996 at *9 n.2. It is undeniable that the Virus has impacted the lives of Louisianans, but "these circumstances are not impediments created by the state." *Bethea*, No. CV216-140, 2016 U.S. Dist. LEXIS 144861 at *7. "While Plaintiffs contend that Defendants have done a poor job of responding to [the Virus], the fact that the [V]irus's provenance was not through Defendants further increases, in this Court's opinion, the impropriety of judicial intervention." *Coalition*, No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996 at *9 n.2; *cf., Bethea*, No. CV216-140, 2016 U.S. Dist. LEXIS 144861 at *6-7. "Assuming *arguendo* that injury has been demonstrated, that injury is nevertheless squarely traceable to the global pandemic, not to the actions of Defendants." *Power Coalition 1*, 2020 U.S. Dist. LEXIS 108714 at *30.

A number of courts, including the Fifth and Sixth Circuits, have specifically relied upon, at least in part, the fact that the Virus—or another natural disaster—does not present state action as reason to either stay a case, grant a preliminary injunction, dismiss claims, or to deny a motion for preliminary injunction.

---

[15] *See, e.g.,* A.G. Op. 20-0104 (Sep. 1, 2020) (Interpreting "disability" under La. R.S. 18:1303(I) to include underlying health conditions known to be co-morbidities for COVID-19 if a medical professional certifies that it presents an unreasonable risk to vote in person.); Statement By Secretary Kyle Ardoin On Administration of Louisiana's November and December Elections (Sep. 2, 2020), https://www.sos.la.gov/Pages/NewsAndEvents.aspx#faq278.

In *Tex. Democratic Party v. Abbott*, the Fifth Circuit, upon granting a motion to stay the Western District of Texas' order granting a preliminary injunction, held that:

> The Constitution is not "offended simply because some" groups "find voting more convenient than" do the plaintiffs because of a state's mail-in ballot rules. *That is true even where voting in person "may be extremely difficult, if not practically impossible," because of circumstances beyond the state's control, such as the presence of the Virus.*

961 F.3d at 405 (emphasis added) (quoting *McDonald*, 394 U.S. at 810). The Fifth Circuit indicated that the result is similar in the VRA context. *See id.* at 404 n.32 ("And here, unlike in *Veasey* [*v. Abbott*], the *state* has not placed any obstacles on the plaintiffs' ability to vote in person." (emphasis in original)). The lack of state action is further emphasized in the concurring opinion, which notes "[f]or courts to intervene, a voter must show that *the state* 'has in fact precluded [voters] from voting.'" *Id.* at 415 (Ho, J., concurring) (emphasis in original) (quoting *McDonald*, 394 U.S. at 808 & n.7)).

In a case before the Sixth Circuit, plaintiffs were challenging the signature gathering requirement of Ohio's ballot-initiative laws in light of the Virus. *Thompson v. Dewine*, 959 F.3d 804, 806 (6th Cir. 2020). When staying the District Court's order granting plaintiffs preliminary injunction, the Sixth Circuit noted the lack of state action inherent in claims resting upon the foundation of the Virus as rationale. *Id.* at 810 ("[J]ust because procuring signatures is now harder (largely because of a disease beyond the control of the State) doesn't mean that Plaintiffs are *excluded* from the ballot."). The court went further by noting that both First Amendment and Section 1983 actions require state action. *Id.* at 810-11.

In *Mays v. Thurston*, plaintiffs sought a mandatory temporary restraining order that the Governor of Arkansas "do more to ensure that Arkansans are allowed to have their vote counted by absentee ballot." No. 4:20-cv-341 (JM), 2020 U.S. Dist. LEXIS 54498 at *2. The District Court

found that the plaintiffs lacked Article III standing. *Id*. at *4-5. Specifically, the court stated that:

> Plaintiffs have failed to articulate an injury suffered at the hands of . . . any . . . state official. Plaintiffs' right to vote during this global pandemic have been made easier by the Governor's . . . executive order suspending the normal prerequisites for requesting an absentee ballot. Plaintiffs complain that the Governor did not do enough. However, Plaintiffs' injury, if any, will occur only . . . if they do not show up to vote at a designated voting place exercising the social distancing and other protections suggested by the State and the federal government. ***Any injury caused by Plaintiffs' failing to take advantage of these available avenues to exercise their rights to vote are not caused by or fairly traceable to the actions of the State, but rather are caused by the global pandemic.*** Therefore, the Court finds that Plaintiffs do not have standing to pursue their requested remedy.

*Id*. (emphasis added). *See also Bethea,* No. CV216-140, 2016 U.S. Dist. LEXIS 144861 at *3-7 (denying preliminary injunction seeking to extend the voting registration deadline in response to Hurricane Matthew, because the State's "decision not to extend the [voter] registration deadline was [not] some sort of action that created an impediment to the right to vote."); *Assoc. of Communities for Reform Now v. Blanco*, No. 2:06-cv-611, Order at 1-2 (E.D. La. 2006) (dismissing request to extend deadline for counting absentee ballots in wake of Hurricane Katrina).

Because Plaintiffs' alleged injuries under the Fourteenth Amendment, VRA, and ADA "are not caused by or fairly traceable to the actions of the State, but rather are caused by the global pandemic," their claims must be dismissed. *Mays*, 020 U.S. Dist. LEXIS 54498 at *4-5.

### b. *Plaintiffs' Purported Injuries Are Not Redressable By the Current Defendants.*

Regardless of state action, Plaintiffs' alleged injury cannot be redressed by a favorable judgment from this Court and should therefore fail. *See Lujan,* 504 U.S. at 560-61; *Gill*, 138 S. Ct. at 1929; *Spokeo, Inc.*, 136 S. Ct. at 1547. In Louisiana, the respective parish boards are responsible for determining who is eligible to vote by absentee ballot and for determining whether an absentee ballot is properly cast. *See* La. R.S. §§ 18:423, 18:1307(1), 18:1303. Plaintiffs have failed to include any parish boards in this suit. *See Louisiana v. United States*, 380 U.S. 145, 151 n. 10

(1965); *Cf. Jacobson v. Fla. Sec'y*, 957 F.3d 1193, 1206-07 (11th Cir. 2020) (because individual county election officials were not part of suit, court could not redress alleged injury and therefore lacked standing). It is hornbook law that a court cannot control the conduct of parties absent from the present litigation. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc); *Jacobson*, 957 F.3d at 1206-12.

### 3. Plaintiffs' Claims Are Not Ripe.

Those Plaintiffs who assert they possess "disabilities" should be dismissed from this suit because their claims regarding absentee voting are not ripe. Those Plaintiffs may be eligible under Louisiana law to vote by absentee ballot, and yet they have not attempted comply with the applicable statutory requirements to do so. *See* A.G. Op. 20-0104 (Sep. 1, 2020).

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296 (1998) (internal quotation marks and citations omitted). Where a court has no idea whether the action in question will occur, the issue is not fit for adjudication. As stated in by the Supreme Court, "A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989).

Plaintiffs Pogue and Taylor assert that they "have disabilities" including "significant medical vulnerabilities that put them at risk of severe complications from COVID-19." Amended Compl. ¶ 139.[16] As discussed *infra,* Sec. III(A)(3), absentee voting is readily accessible to Plaintiffs if they in fact have the "disabilities" they assert. Through Section 18:1303(I) and the Disabled Application for Absentee By Mail Ballot Form, Plaintiffs remain completely eligible to

---

[16] The Louisiana NAACP also baldly asserts, that it has members who are disabled, although it does not elaborate which specific members are disabled or what their disabilities are, beyond Plaintiff Taylor.

vote absentee by mail if they are "disabled" in the opinion of a physician or other medical professional. In fact, Plaintiffs are well aware of the Disabled Application for Absentee By Mail Ballot form because they cite to it. Amended Compl. at 40, n. 134. Yet, Plaintiffs have not applied to vote by absentee ballot via Section 18:1303(I) and the Disabled Application for Absentee By Mail Ballot form. Especially in light of the Attorney General's recent opinion, A.G. Op. 20-0104 (Sep. 1, 2020), Plaintiffs appear eligible to vote by mail absentee if they complete the Disabled Application for Absentee By Mail Ballot form.

In order for their claims to be ripe, Plaintiffs must first apply to vote absentee by completing a Disabled Application for Absentee By Mail Ballot form and be denied by their local registrar. This has not happened and so Plaintiffs claims are not ripe depriving them of standing.

**B.  Plaintiffs' Claims Present Non-Justiciable Political Questions.**

Issues that are "entrusted to one of the political branches or involve[] no judicially enforceable rights . . . present a political question . . . outside the courts' competence and therefore beyond the courts' jurisdiction." *Rucho*, 139 S. Ct. at 2494 (internal quotations omitted). As it is Plaintiffs' burden to prove jurisdiction, *Ramming*, 281 F.3d at 161, "[a]bsent pellucid proof provided by plaintiffs that a political question is not at issue, courts should not substitute their own judgments for state election codes." *Coalition*, 2020 U.S. Dist. LEXIS 86996 at *9. The purpose of the political question doctrine is to "protect[] the separation of powers and prevent[] federal courts from overstepping their constitutionally defined role." *Baker v. Carr,* 369 U.S. 186, 210 (1962). Additionally, here, there are "a lack of judicially discoverable and manageable standards for resolving" Plaintiffs' claims. *Baker,* 369 U.S. at 210. There are no judicially manageable standards to determine what measures must be taken to regulate elections in light of the Virus. *See Coalition*, 2020 U.S. Dist. LEXIS 86996 at *6.

"Ultimately, ordering Defendants to adopt Plaintiffs' [relief] would require the Court to micromanage the State's election process. The relief Plaintiffs seek bears little resemblance to the type of relief plaintiffs typically seek in election cases aimed to redress state wrongs." *Coalition*, 2020 U.S. Dist. LEXIS 86996 at *9. As such, the questions put forth to the Court by Plaintiffs present political—not judicial—questions that are not addressable by the federal courts.

## II.    **PLAINTIFFS HAVE FAILED TO STATE A CLAIM.**

Although this Court must accept all of Plaintiffs' factual allegations in determining this Motion, this Court is not required to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise the right to relief above the speculative level". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Additionally, this Court need not accept as true any conclusory factual assertions. *Id*. Accordingly, to survive a motion to dismiss, Plaintiffs' claims must be plausible on their face. *Iqbal*, 556 U.S. at 678. This means that Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged." *Id*. (emphasis added). Plaintiffs have failed to do so here.

The conduct alleged by Plaintiffs points to a singular culprit: the Virus. Plaintiffs again and again point to this invisible menace while addressing nearly everything in their Amended Complaint. For example, the first paragraph of the Amended Complaint does not address voting or Louisiana's alleged actions against Plaintiffs whatsoever, instead discussing the Virus. This is true for the vast majority of the Amended Complaint. In large part, Plaintiffs have failed to state a claim because the action they complain of was not brought about or caused by the State. *See supra* at Sec. I(A)(2)(a). Therefore, for reasons similar to why Plaintiffs lack standing, they have failed

to state a claim under Rule 12(b)6. *Id*.[17]

### III.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED WITH REGARD TO THEIR NEW ADA CLAIMS.

In a transparent attempt at a "Hail Mary" to save their deficient constitutional claims, Plaintiffs have amended their suit to allege new claims under the ADA. Amended Compl. at ¶¶ 17, 136-144. These new claims under the ADA are destined to fail, just as their constitutional claims. First, Plaintiffs fail to make out a *prima facie* case of discrimination under the ADA because either they do not have ADA-recognized disabilities, they do not meet the essential eligibility requirements to vote absentee, and they are not excluded by reason of their "disabilities," or at all. Plaintiffs' failure to make out a *prima facie* ADA case also stems from their failure to establish proper standing. *See supra* at Sec. I. Second, even if Plaintiffs do somehow manage to make out a *prima facie* case of discrimination under the ADA, which they cannot, their requested relief would work a "fundamental alteration" to Louisiana's absentee voting system. *See, e.g., People First of Ala. v. Merrill*, 2020 U.S. Dist. LEXIS 104444, *67-68 (N.D. Ala. June 15, 2020), *stay granted*, 2020 U.S. LEXIS 3541 (July 2, 2020). Similarly, Plaintiffs' proposed remedy does not constitute a reasonable modification of the Challenged Provisions.

Because Plaintiffs fail to make out a *prima facie* ADA violation, and their requested relief would be unreasonable, their new ADA claims must be dismissed.

### A.  Plaintiffs Do Not Establish A *Prima Facie* Case Of Discrimination Under The ADA.

Plaintiffs cannot establish that the Challenged Provisions work a *prima facie* ADA violation because Plaintiffs do not have ADA-recognized disabilities, do not meet the essential eligibility requirements, and are not excluded or discriminated against because of their alleged

---

[17] The State will provide additional and more detailed analysis as to why the relief sought should not be granted in its Opposition to Plaintiffs' Preliminary Injunction should intervention be granted.

"disabilities," or at all.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered." *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004. Thus, to establish a prima facie case of discrimination under Title II of the ADA, a plaintiff must demonstrate:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Melton*, 391 F.3d at 671-72. *See also Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997). If a plaintiff can establish a *prima facie* case of discrimination, "a presumption of discrimination arises," and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).

### 1. Plaintiffs Cannot Establish "Disability" Under The ADA In The Context Of Voting.

As a preliminary matter, a plaintiff must establish that he or she is disabled in order to maintain a cause of action under the ADA. *Mason v. United Air Lines, Inc.,* 274 F.3d 314, 316 (5th Cir. 2001); *see also Smith v. Tangipahoa Parish Sch. Bd.*, 2006 U.S. Dist. LEXIS 85377, *21-27 (E.D. La 2006). The term "disability" is defined under the ADA as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment". 42 U.S.C. §

12102(1). The determination of disability boils down to three-part test, examining whether: (1) the plaintiff has an "impairment;" then, (2) whether the impairment affects a "major life activity;" and finally, (3) whether its effects are "substantial." *Waldrip v. General Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003). *See also Moore v. Centralized Mgmt. Servs.*, LLC, 2020 U.S. Dist. LEXIS 74157, *5-10 (E.D. La. 2020); *Hebert v. Ascension Parish Sch. Bd.*, 396 F. Supp. 3d 686, 693 (M.D. La. 2019).

 *Plaintiff Pogue Does Not Possess a Disability Sufficient to Support Her ADA Claim.*

 Plaintiff Pogue incorrectly asserts that her asthma is conclusively a disability under the ADA. Amended Compl. ¶¶ 23, 139. Asthma can, in some cases, qualify as a disability under the ADA. *See, e.g., Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (6th Cir. 1998). Suffering from asthma, however, does not constitute a *per se* substantial limitation on the major life activity of breathing, and courts engage in an individualized inquiry, including, until recently, the effect of medication on the condition, in order to determine whether a condition substantially limits a major life activity. *See Kropp ex rel. S.K. v. Me. Sch. Admin. Union # 44*, 2007 U.S. Dist. LEXIS 11648, 2007 WL 551516, at * 17 (D. Me. Feb. 16, 2007) (any limitation must be substantial even when medications and treatments are in place); *White v. Honda of Am. Mfg.*, 241 F.Supp.2d 852, 856 (S.D. Ohio 2003) (collecting cases). Asthma has typically been found to rise to the level of a substantial limitation on the major life activity of breathing where the plaintiff has a long history of asthmatic attacks and endures numerous and severe restrictions on daily activities as a result of the condition. *See, e.g., Albert v. Smith's Food & Drug Ctrs., Inc*., 356 F.3d 1242, 1245 (10th Cir. 2004). Where a plaintiff suffers asthma attacks only in response to particular stimuli and is able to engage in almost all normal life activities, courts have been less likely to conclude that the plaintiff is substantially limited in the major life activity of breathing. *See, e.g., Boker v. Sec'y, Dep't of*

*Treasury*, 2009 U.S. Dist. LEXIS 90109 (S.D. Oh. 2009) (Plaintiff not disabled under the ADA where her asthma only triggered by specific irritants).

Plaintiff Pogue alleges her asthma and respiratory issues are "environmentally induced, triggered by allergens and other pollutants, like smoke or dust. [She has] difficulty breathing and require[s] an inhaler when [she] experience[s] an asthma attack." *Id*. at ¶ 6; Amended Compl. ¶ 23. Her "symptoms are . . . not perpetual, so [she] do[es] not require [her] inhaler on a frequent or standard basis." Pogue Decl. ¶ 6. In her declaration, Plaintiff Pogue describes going grocery shopping, visiting doctors for consultations, and voting in person during the July 11, 2020 and August 15, 2020 elections all during the COVID-19 pandemic. Pogue Decl. ¶¶ 4, 7, 13. Plaintiff Pogue herself defines her asthma as a "**minor diagnosis**" and "**not 'moderate or severe**.'" *Id*. ¶ 10 (emphasis added). Plaintiff Pogue admits that her respiratory issues are so minor that she believed applying for an absentee ballot by attesting that she has a "serious underlying medical condition" would subject her to "criminal penalties." *Id*. ¶ 10-11. It is also important to note that the CDC lists only "moderate-to-severe" asthma as a factor that "might" increase risk for severe illness from the Virus.[18] So, if Plaintiff Pogue does not believe her intermittent respiratory issues are "serious," "severe," or even "moderate," how can they miraculously rise to the level of "substantial" for ADA purposes? *Cf. Boker*, 2009 U.S. Dist. LEXIS 90109.

*Plaintiff Taylor Does Not Possess a Disability Sufficient to Support Her ADA Claim.*

Plaintiff Taylor asserts that her diabetes, high blood pressure, and "other medical conditions" classify as disabilities under the ADA. Amended Compl. ¶¶ 24, 139; Mot. Prelim. Inj.

---

[18] Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html    <%22> (accessed on 9/1/20) (listing only "moderate-to-severe" asthma as a factor that "might" increase risk for severe illness from the Virus).

at 21-23. In her declaration, Plaintiff Taylor clarifies that the "other medical condition" described in her complaint and motion for preliminary injunction is a thyroid disorder. Taylor Decl. at 4.

At the *prima facie* stage of an ADA analysis a "plaintiff must point to evidence that [s]he has a disability for purposes of the ADA." *Steele v. Oasis Turf & Tree, Inc.*, 2012 U.S. Dist. LEXIS 103722, *16-17 (S.D. Ohio 2012). Simply having a medical diagnosis is not sufficient to establish a "disability" for purposes of the ADA. *Laws v. HealthSouth N.Ky. Rehab. Hosp.*, 828 F.Supp.2d 889 (E.D. Ky. 2011) (granting summary judgment to employer because plaintiff did not show she was disabled under the ADA, never requested an accommodation, and worked full schedules). "Although medical testimony is not always necessary" to demonstration impairment or disability "particularly in light of the 2008 Amendments to the ADA, [plaintiffs] must offer some admissible evidence that [they are] "disabled" as that term is defined in the ADA. Plaintiff's own conclusory statements are insufficient." *Smith v. Waffle House, Inc.*, 2012 U.S. Dist. LEXIS 85577, *5-6 (M.D. Tenn. 2012). Both this Court and the Fifth Circuit have held that diabetes does not always amount to "substantial limitations under the ADA" unless a plaintiff alleges sufficient facts to establish otherwise. *See Odds v. Louisiana*, 2012 U.S. Dist. LEXIS 134194, *7-8 (M.D. La. 2012); *Griffin v. UPS*, 661 F.3d 216, 220, 222-25 (5th Cir. 2011).

Plaintiff Taylor has not offered any evidence that she is "disabled" within the meaning of the ADA. Plaintiff Taylor fails to adequately describe her medical conditions whatsoever, or why they qualify as disabilities under the ADA. *See generally* Amended Compl. ¶¶ 24, 139; Taylor Decl. at 4. Furthermore, Plaintiff Taylor does not adduce any evidence aside from her mere assertion, that she actually has diagnoses for or suffers from these conditions. *Id*. Plaintiff Taylor has failed to "offer some admissible evidence that [s]he is 'disabled' as that term is defined in the ADA. [her] own conclusory statements are insufficient." *Id*. at *6. *See, e.g., Smith v. Waffle House,*

*Inc.*, 2012 U.S. Dist. LEXIS 85577 at *5-6 (holding that "plaintiff has not sufficiently created a genuine issue of material fact, through admissible evidence, that he is disabled"). *See also Odds*, 2012 U.S. Dist. LEXIS 134194 at *7-8; *Griffin v. UPS*, 661 F.3d at 220, 222-25.

Accordingly, no plaintiff in the present case is disabled within the meaning of the ADA with respect to voting and so Plaintiffs' ADA claims fail to reach even a *prima facie* level. Whether any of these Plaintiffs might qualify to vote absentee under La. Rev. Stat. 1303(I) requires consultation between the Plaintiff and the applicable medical professional.[19]

### 2.  *Plaintiffs Are Not Qualified Individuals Because The Challenged Provisions Are Essential Eligibility Criteria.*

A plaintiff is a qualified individual if she "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity . . . with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services." *United States v. Georgia*, 546 U.S. 151, 153-54 (2006) (quoting 42 U.S.C. § 12131(2)). While "rules, policies, [and] practices" may be subject to reasonable modification, "essential eligibility requirements" are not. *Mary Jo C. v. N. Y. State & Local Ret. Sys.*, 707 F.3d 144, 159 (2d Cir. 2013) (citing 42 U.S.C. § 12131(2)). When an individual cannot meet an essential eligibility requirement, "the only possible accommodation is to waive the essential requirement itself . . . [but] [w]aiving an essential eligibility standard would constitute a fundamental alteration in the nature of the . . . program [at issue]." *Pottgen v. Missouri State High School Activities Ass'n*, 40 F.3d 926, 930 (8th Cir.1994); *see also Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 850 (7th Cir. 1999) (finding the essentialness inquiry should

---

[19] There is no law at present that indicates that disability for the purposes of the ADA are coextensive with the word "disability" as it appears in La. Rev. Stat. 1303(I).

be "whether waiver of the rule . . . would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change"). Therefore, a plaintiff who does not meet an essential eligibility requirement is not qualified to state a claim under the ADA. *See People First of Ala.*, 2020 U.S. Dist. LEXIS 104444 at \*60-61, 67-68. The question then becomes: is the requirement essential for eligibility in the program? "[W]hether an eligibility requirement is essential is determined by consulting the importance of the requirement to the program in question." *Mary Jo C.*, 707 F.3d at 159; *Pottgen*, 40 F.3d at 930 ("[T]o determine whether [the plaintiff] is a 'qualified individual' under [Title II of] the ADA, we must first determine whether the [challenged provision] is an essential eligibility requirement by reviewing the importance of the requirement to the . . . program [at issue]."). *People First of Ala.*, 2020 U.S. Dist. LEXIS 104444 at \*60-61, 67-68.

Louisiana's Excuse Requirement for voting by absentee ballot,[20] which Plaintiffs challenge as violative of the ADA, is unquestionably an essential eligibility requirement. Specifically, the Excuse Requirement goes to the integrity and sanctity of the ballot and election. *See, e.g.*, *Adkins v. Huckaby*, 755 So.2d 206 (La. 2000) (discussing the interests in integrity and sanctity of the ballot and election furthered by substantial compliance with Section 1303). The state also does not regularly grant waivers of the Excuse Requirement. *Cf. Mary Jo C.*, 707 F.3d at 160 (finding the challenged provision non-essential where the state regularly granted waivers and extensions of the provision). Accordingly, the Excuse Requirement is a condition precedent to eligibility under state law, and essential eligibility requirements are not subject to reasonable modifications. *See People*

---

[20] Plaintiffs' ADA claims are vague and confusing when it comes to exactly which provisions they are challenging under the ADA. Although their Amended Complaint could be read to state that Plaintiffs' ADA challenge applies to all of the "Challenged Provisions," it is unclear how their framing of those claims implicates anything beyond the Excuse Requirements. *See, e.g.*, Amended Compl. at ¶¶ 136-143; Mot. Prelim Inj. at 21-23. If Plaintiffs do intend to challenge the early voting period under the ADA, they have not adequately done so and that claim must be dismissed.

*First of Ala.*, 2020 U.S. Dist. LEXIS 104444 at *67-68. Waiving the Excuse Requirement would work a fundamental alteration in the nature of absentee voting in Louisiana. *See Pottgen*, 40 F.3d at 930. Accordingly, Plaintiffs cannot state an ADA claim against the Excuse Requirement.

### 3. Plaintiffs Are Not Being Excluded, Denied, Or Discriminated Against By Reason Of Their Alleged "Disabilities," Or At All.

As discussed *supra*, Plaintiffs have not adequately demonstrated that they possess "disabilities" within the meaning of the ADA with respect to voting. Accordingly, Plaintiffs' ADA claims fail and that should be the end of both the *prima facie* ADA analysis and the ADA analysis altogether. However, in arguendo, if this Court determines that Plaintiffs do possess disabilities under the ADA, which they do not, Plaintiffs' ADA claims also fail at the *prima facie* level because they are not excluded, denied, or discriminated against by reason of their alleged "disabilities," or at all. *See Melton*, 391 F.3d at 671-72.

Exclusions under Title II need not be absolute: a public entity violates Title II not just when "a disabled person is completely prevented from enjoying a service, program, or activity," but rather when such an offering is not "readily accessible." *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (citing 28 C.F.R. § 35.150). However, mere difficulty in accessing a benefit is not, by itself, a violation of the ADA. *People First of Ala.*, 2020 U.S. Dist. LEXIS 104444 at *61 (citing *Bircoll v. Miami-Dade Cty*, 480 F.3d 1072, 1088 (11th Cir. 2007)). Instead, a plaintiff must show that the failure to accommodate created an injury. *Id.* Further, a public entity need not "employ any and all means to make judicial services accessible to persons with disabilities." *Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004). Rather, the entity must make "reasonable modifications that would not fundamentally alter the nature of the service provided . . . [or] impose an undue financial or administrative burden." *Id.* (citations omitted).

Here, Plaintiffs are not discriminated against, excluded, or denied from voting or voting by absentee ballot by reason of their alleged "disabilities." All Plaintiffs have admitted that they are able and willing to leave their homes and have done so, for one reason or another, during the pendency of the COVID-19 pandemic. *See generally* Pogue Decl.; Taylor Decl. In fact, all individual Plaintiffs voted in person during the July and August 2020 elections.[21] There is absolutely no evidence that voting in person was not readily accessible to Plaintiffs.

Furthermore, voting by absentee ballot is readily accessible to Plaintiffs if they in fact have disabilities confirmed by a medical professional. Louisiana law clearly and expressly makes voting by absentee ballot accessible to persons with disabilities, stating that:

> (1) Any qualified voter who submits any of the following to the registrar of voters may vote absentee by mail upon meeting the requirements of this Chapter:
>> (a) A copy of a current mobility impairment identification card bearing a photograph of the voter and the international symbol of accessibility issued by the secretary of the Department of Public Safety and Corrections as authorized by the provisions of R.S. 47:463.4.
>> (b) A copy of current documentation showing eligibility for social security disability benefits, veteran's disability benefits, paratransit services, benefits from the office for citizens with developmental disabilities, or benefits from Louisiana Rehabilitation Services.
>> (c) *Current proof of disability from a physician, optometrist, physician assistant* as defined in R.S. 37:1360.22, or *nurse practitioner* as defined in R.S. 37:913.

La. R.S. § 18:1303(I) (emphasis added). A simple search of the Secretary of State's website yields the Disabled Application for Absentee By Mail Ballot Form, which is clearly available on the Vote By Mail page.[22] Through Section 18:1303(I) and the form, Plaintiffs remain completely eligible to vote absentee by mail if they are "disabled" in the opinion of a physician or other medical professional.[23]

Moreover, on September 1, 2020, the Attorney General issued guidance interpreting the term "disability" in La. R.S. § 18:1303(I) to include any "underlying health condition known to be

---

[21] Harding Decl. ¶¶ 16-18; Pogue Decl. ¶¶ 13-15; Taylor Decl. ¶ 16, (PI Ex. 4-6); Joint Opp. to PI Ex. D; Ex. L.
[22] https://www.sos.la.gov/ElectionsAndVoting/PublishedDocuments/DisabledApplicationForAbsenteeByMailBallot.pdf.
[23] Once again, we note that 1303(I) does not define disability in the same manner as the ADA.

a co-morbidity for COVID-19 . . . if a medical professional certifies that . . . the existence of the co-morbidity presents an unreasonable risk for that elector to vote in person . . ." A.G. Op. 20-0104. Any minor difficulty Plaintiffs may experience with voting in person or by absentee ballot is not because of state action and is not because of their alleged "disabilities," or state discrimination of those disabilities, but rather is a result of the Virus. *See supra* at Sec. I(A)(2).

## B. Plaintiffs' Requested Relief Under The ADA Is Unreasonable.

Assuming arguendo that Plaintiffs do manage to make a *prima facie* showing of discrimination under the ADA, which they cannot, their ADA claims must fail because their requested relief is unreasonable and incompatible with Louisiana's absentee voting program. Specifically, as discussed *supra*, Plaintiffs' requested relief would work a "fundamental alteration" to Louisiana's absentee voting system. *Supra* Sec. III(A)(2). *See also*, *e.g., People First of Ala.*, 2020 U.S. Dist. LEXIS 104444, *67-68. Second, granting Plaintiffs' requested relief would interfere with the impending elections. *See supra* Sec. III. The Supreme Court has repeatedly dissuaded such interference. *Id*. In fact, in *People First of Alabama,* where the Northern District of Alabama enjoined Alabama's absentee photo ID requirement as violative of the ADA, the Supreme Court later issued a stay of the district court's order. 2020 U.S. LEXIS 3541 (2020).

## IV.    THE *PURCELL* DOCTRINE DICTATES THAT THIS COURT SHOULD NOT INTERFERE WITH IMPENDING ELECTIONS.

Both the Supreme Court and the Fifth Circuit "ha[ve] repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam); *see also Tex. Democratic Party*, 961 F.3d at 411-12; *Coalition for Good Governance v. Raffensperger*, No. 1:20-cv-1677, 8-9 (May 26, 2020), ECF No. 56 ("The Court's [dismissal] is bolstered by the fact that Plaintiffs seek extensive relief on the eve of/during an election"). "That is especially true

where, as here, . . . local officials are actively shaping their response to changing facts on the ground." *Tex. Democratic Party*, 961 F.3d at 412 (quoting *S. Bay*, 2020 U.S. LEXIS 3041 at *3). This doctrine exists because judicial intrusion into elections must account for "considerations specific to election cases." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). These considerations include the fact that "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4-5. "As an election draws closer, that risk will increase." *Id.* at 5. The existence of the Virus does not change this analysis. Recently, the Supreme Court stated that "changing the election rules so close to the election date . . . contravened [Supreme Court] precedent[]."*Republican Nat'l Comm.*, 140 S. Ct. at 1207.

Here, Louisiana is on the eve of the November election, and in the process of issuing guidance pertaining to provisions of Louisiana's election law in light of the Virus.[24] But aside from the additional guidance from State officials, election administrators are currently making preparations to print and distribute vote by mail applications and ballots. The registration deadline for the November election in person or by mail is currently October 5, 2020, and the registration deadline for electors using the Louisiana's online registration portal GeauxVote is October 13, 2020, which is only one month away.[25] Early voting begins on October 20. Changing the method of absentee balloting at this stage will invite chaos into the system and harm more people through voter confusion than any court-ordered remedy would help.[26]

## V.    PLAINTIFFS HAVE FAILED TO JOIN THE REQUIRED PARTIES.

Rule 12(b)(7) of the Federal Rules of Civil Procedure establishes that a plaintiff's claim

---

[24] *See, e.g.,* A.G. Op. 20-0104; Statement By Secretary Kyle Ardoin On Administration of Louisiana's November and December Elections (Sep. 2, 2020), https://www.sos.la.gov/Pages/NewsAndEvents.aspx#faq278.
[25] https://www.sos.la.gov/ElectionsAndVoting/GetElectionInformation/Pages/default.aspx.
[26] The same issue repeats itself for the subsequent elections, as the post-election calendar of required events for the November election have a cascading effect on the December elections.

may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19(a)(1)(A) states that a party is required to be joined if, "in that [party's] absence, the court cannot accord complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1)(A). Here, as discussed *supra* at Sec. II(A)(2)(b), Plaintiffs have failed to add the necessary parties in the respective parish boards, and so this Court cannot afford complete relief among the existing parties.

## **CONCLUSION**

For the aforementioned reasons, Plaintiffs' claims should be dismissed with prejudice.

Dated: September 2, 2020                                                                  Respectfully Submitted,

JEFF LANDRY
ATTORNEY GENERAL

*/s/ Angelique Duhon Freel*                                   */s/ Celia R. Cangelosi*
Angelique Duhon Freel (La. Bar Roll No. 28561)   Celia R. Cangelosi (Bar Roll No. 12140)
Jeffrey M. Wale (La. Bar Roll No. 36070)              5551 Corporate Blvd. Suite 101
Assistant Attorneys General                                    Baton Rouge, LA 70808
Louisiana Department of Justice                             Phone: 225-231-1453
Civil Division                                                             Fax: 225-231-1456
P. O. BOX 94005                                                       Email: celiacan@bellsouth.net
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6017                                    *Counsel for Secretary of State Ardoin*
Facsimile: (225) 326-6098
Email: freela@ag.louisiana.gov

Jason B. Torchinsky*
Phillip M. Gordon*
Dennis W. Polio*
Holtzman Vogel Josefiak Torchinsky PLLC
45 N. Hill Dr., Suite 100
Warrenton, VA 20186
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
Email: jtorchinsky@hvjt.law
pgordon@hvjt.law
*admitted pro hac vice*

*Counsel for Intervenor-Defendant the State of Louisiana*

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this 2nd day of September 2020, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Angelique Duhon Freel*
Angelique Duhon Freel

*Counsel for Intervenor-Defendant the State of Louisiana*
