# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

JENNIFER HARDING; JASMINE POGUE;
LOUISIANA STATE CONFERENCE OF THE
NAACP; and POWER COALITION FOR EQUITY
AND JUSTICE,

        *Plaintiffs*,

v.

JOHN BEL EDWARDS, in his official capacity as
Governor of Louisiana; KYLE ARDOIN, in his official
capacity as Secretary of State of Louisiana,

        *Defendants*,

   and

THE STATE of LOUISIANA

        *Defendant-Intervenor*.

**Case. No. 3:20-cv-00495-SDD-RLB**

## SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The COVID-19 pandemic shows no sign of ending, yet Defendants have inexplicably chosen to roll back key protective voting provisions for the November and December 2020 elections despite anticipating a surge in voter turnout.  As it stands, vulnerable voters throughout Louisiana, including those with COVID-19 comorbidities, voters who have been medically advised to self-quarantine due to COVID-19 concerns, and voters who take care of and live with individuals with comorbidities are not afforded the ability to vote absentee.  They will be forced to choose between voting in person—risking their health and the health of others—or not voting at all, absent meeting any of the newly interpreted narrow conditions under Title 18 § 1303 *et seq.* of the Louisiana Election Code.  This stands in stark contrast to the July and August 2020 elections,

1

for which the emergency election plan then in place allowed certain voters to request absentee by mail ballots for five COVID-19 related reasons. *See* Pls.' Ex. 22, Sec'y of State Emergency Election Plan for July 11, 2020 Presidential Preference Primary Election and August 15, 2020 Municipal General Elections (Apr. 20, 2020).

At this juncture, Plaintiffs request that the limited protections provided in the Emergency Election Plan that governed the July and August 2020 elections be extended to the upcoming November and December 2020 elections.

I.    THE CURRENT LANDSCAPE

In the current absence of any emergency election plan for the upcoming elections, voters cannot request absentee by mail ballots for any COVID-19-related reason.  Under state law without modification, absentee voting excuses set forth in La. R.S. 18:1303 apply to voters who are 65 years and older, as well as voters who are temporarily outside of the state or their parish of residence (e.g., temporarily absent, offshore, moved out of parish, out of state students, out of parish clergy), are confined or institutionalized (e.g., resident of nursing home, involuntary confinement (in an institution for mental treatment), hospitalized, incarcerated, sequestered juror), or are part of the address confidentiality program.  La. R.S. 18:1303.  Additionally, a qualified voter with a disability may vote "absentee by mail" by providing "[c]urrent proof of disability from a physician." La. R.S. 18:1303(I)(1)(c) (the "Disability Excuse").  However, the Louisiana Election Code does not define the term "disability."

On September 1, 2020, Louisiana Attorney General Jeff Landry published an opinion purporting to address "the eligibility of a voter to vote absentee by mail if they have been diagnosed with or tested positive for COVID-19, or have been advised by a medical or public health professional to quarantine awaiting the results of a COVID-19 test, during the time of the

2

upcoming early voting and before Election Day." *See* Pls.' Ex. 181, Att'y Gen. Op. 20-0104 (Sept. 1, 2020) (the "Opinion").[1]  The Opinion states that "a voter who is diagnosed with COVID-19 or is subject to a quarantine order while awaiting a COVID-19 diagnosis would qualify to vote absentee [under La. R.S. 18:1303(I)] so long as a medical professional certifies the voter is disabled." *Id.* at 2.  The Opinion goes further, stating that, based on the Attorney General's "review of the statutes . . . under this existing law, any voter with an underlying health condition known to be a co-morbidity for COVID-19 will qualify for an absentee ballot if a medical professional certifies that, in the medical professional's opinion, the existence of the comorbidity presents an unreasonable risk for that voter to vote in person to the point that it rises to a disability under [La. R.S. § 18:1303(I)]." *Id.*  The Opinion proceeds to affirm that these "disabilities . . . are medical conditions that may prevent or prohibit a person from voting in person" and can therefore be viewed as "temporary disabilities" that fall within the definition of disability for the purposes of La. R.S. § 18:1303(I).  *Id.*

Following publication of this Opinion, Defendants State of Louisiana and Secretary of State Ardoin adopted this new position with respect to what voters with comorbidities must do in order to vote absentee by mail during the pandemic.  Specifically, they now argue that "every Louisianan who is either diagnosed with [COVID-19] *or who has a co-morbidity that, in a medical professional's opinion, places that person at increased risk from [COVID-19] has a qualifying disability* and is able to vote absentee under current Louisiana law."  Dkt. No 52, Defs.' State of Louisiana and Sec'y of State's Joint Resp. in Opp. to Mot. for Preliminary Injunction ("Opposition

---

[1] Importantly, while the Attorney General's opinion may be informative, its interpretation of Louisiana law is in no way binding on the Court.  *See JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F.Supp.3d 620, 637 (M.D. La. 2018) (stating that the Louisiana Attorney General's Opinion was "not binding") (citing *Colvan Cattle Co., L.L.C. v. Lafourche Par. Gov't*, No. 08-907, 2009 WL 2914369, at *5 (E.D. La. Sept. 4, 2009) ("Louisiana Attorney General opinions are merely advisory and not binding . . . .").

Motion") at 11–12 (emphasis added).  Defendants State of Louisiana and Secretary of State Ardoin repeat that argument in the same brief, stating again that "any person who either has [COVID-19] or *has a co-morbidity* is entitled to an absentee ballot under Louisiana law *so long as a medical professional certifies to that fact*."  *Id.* at 26 (emphasis added).

## II.    THE STATE'S NEWLY INTERPRETED DISABILITY EXCUSE CREATES IMPERMISSIBLE OBSTACLES FOR VOTERS FACING THE HIGHEST RISKS OF COVID-19

Through this new position, the State concede that voters who "have been diagnosed with or test positive for COVID-19, or have been advised by a medical or public health professional to quarantine awaiting the results of a COVID-19 test" and voters with comorbidities should be afforded the opportunity to vote absentee by mail in the November and December 2020 elections. Pls.' Ex. 181 at 1.  However, the Attorney General's new interpretation of La. R.S. 18:1303(I) will impose impermissible obstacles on the ability of voters with comorbidities and caretakers to vote absentee by mail because it is flawed in the following ways: (1) it unconstitutionally conditions the right to vote on a fee; (2) it imposes unduly burdensome requirements on voters that are not contemplated by the plain text of the state Election Code; (3) it does not afford caretakers of persons with comorbidities the same access to absentee voting; and (4) it violates federal voting laws intended to provide accessibility to absentee voting for disabled voters.

### A. The Medical Certification Requirement of the Disability Excuse as Applied During the COVID-19 Pandemic Unconstitutionally Conditions Voting on a Fee

The Disability Excuse, as newly interpreted by the Attorney General's advisory opinion to apply to voters with comorbidities and those diagnosed with COVID-19 in light of the pandemic, unconstitutionally conditions the right to vote on a person's wealth in violation of the Equal Protection Clause of the Fourteenth Amendment.  A "state violates the Equal Protection Clause of

the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard." *Harper v. Va. Bd. Of Elections*, 383 U.S. 663, 666 (1966).

Voters with comorbidities are effectively prohibited from voting in person because of their underlying conditions, as are voters with COVID-19 infections. *See O'Brien v. Skinner*, 414 U.S. 524, 525 (1974) (striking down prohibition of voters confined pretrial from voting absentee); *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008) (recognizing that it "cannot be disputed" that the lack of absentee voting "impose[s] a substantial burden on voters physically unable to attend a polling station because they are hospitalized, homebound, or incarcerated"). These voters must vote absentee by mail to avoid the heightened risks associated with infection and transmission and to abide by public health and medical guidance.

In her September 9, 2020 testimony, Commissioner Hadskey confirmed that the Secretary of State's office is in the process of implementing a modified application for the disability excuse as interpreted in the Attorney General's advisory opinion., though she could not provide details as to the form's substance. *See* Tr. 9:8-10:2. At this time, the disability excuse as interpreted by the Attorney General is the only option for voters with comorbidities and for voters diagnosed with COVID-19 to vote by absentee mail-in ballot. Accordingly, to be eligible to vote absentee, these voters must satisfy the medical certification requirement.

When obtaining a medical certification from a "physician, optometrist, physician assistant, or nurse practitioner," a voter may have to pay a fee. For voters with comorbidities who are uninsured, this payment may be for the full cost of the examination necessary for the medical provider to collect the information needed to attest whether the voter's comorbidity "rises to a disability under 1303(I). Pls.' Ex. 181 at 2. Even those who are insured may be required to provide a copayment. For voters diagnosed with COVID-19, the costs associated with receiving a medical

certification would presumably include the expense of COVID-19 tests, which are also not universally free.

The State has made no indication that these fees would be waived for COVID-19-positive voters or for voters with comorbidities who are unable or unwilling to pay them as a precondition to vote under the Attorney General's interpretation of the Disability Excuse. Moreover, the risks associated with the extra lengths that indigent voters with comorbidities would need to go to in order to obtain subsidized medical consultation at a public hospital run counter to the objective of the disability absentee voting program—to allow those at risk to stay home and stay safe.

There is no justification or basis for implementing a monetary fee for a single subset of voters—particularly those who are suffering from COVID-19 or at higher risk of serious or lethal complications should they fall ill from the virus. It is a longstanding electoral legal principle that a class of voters cannot be selectively burdened based on wealth. *See, e.g.*, *Harper*, 383 U.S. at 668 (applying strict scrutiny to legislation that effectively permanently denied access to vote to a discrete group of voters based on the lack of wealth or property which, "like race, creed, or color, is not germane to one's ability to participate in the electoral process. Lines drawn on the basis of wealth or property, like those of race, are traditionally disfavored"); *Kramer v. Union Free School Dist.*, 395 U.S. 621, 626–27 (1969) (applying strict scrutiny and striking down under the Equal Protection Clause a state statute limiting the right to vote in certain school districts to owners or lessees of taxable realty).

To be sure, Plaintiffs are not claiming that the "proof of disability" required by La. R.S. 18:1303(I) is unconstitutional on its face. Under the current circumstances, however, many rules and requirements that were previously permissible have become unduly burdensome and impermissible. *See League of Women Voters of Va. v. Va. State Bd. Of Elec.*, No. 6:20-cv-0024,

_F. Supp. 3d _, 2020 WL 2158249, at *7-8 (W.D. Va. May 5, 2020) ("*LWVV*") (acknowledging that "[i]n ordinary times, [the absentee ballot] witness signature requirement may not be a significant burden on the right to vote [, b]ut these are not ordinary times. In our current era of social distancing . . . the burden is substantial for a substantial and discrete class of Virginia's electorate.")

In light of the risks posed by the pandemic, voters who have been diagnosed with COVID-19 or its comorbidities are compelled to vote by absentee mail-in ballot because in-person voting is not a viable option. The prerequisite fees associated with obtaining the medical certification required to exercise their right to vote absentee during the pandemic impose an unconstitutional burden on this targeted category of voters.

### B. The Louisiana Attorney General's Interpretation of La. R.S. 18:1303(I) Imposes Burdensome Requirements Not Contemplated by the Plain Text of the Statute

The medical certification requirements set forth by the Attorney General's advisory opinion interpreting La. R.S. 18:1303(I) impose a heightened and undue burden not contemplated in the express language of the statute.

As described above, La. R.S. 18:1303(I) applies to voters with disabilities and states that:

[a]ny qualified voter who submits any of the following to the registrar of voters may vote absentee by mail upon meeting the requirements of this Chapter:

(a) A copy of a current mobility impairment identification card bearing a photograph of the voter and the international symbol of accessibility issued by the secretary of the Department of Public Safety and Corrections as authorized by the provisions of R.S. 47:463.4.

(b) A copy of current documentation showing eligibility for social security disability benefits, veteran's disability benefits, paratransit services, benefits from the office for citizens with developmental disabilities, or benefits from Louisiana Rehabilitation Services.

(c) Current proof of disability from a physician, optometrist, physician assistant as defined in R.S. 37:1360.22, or nurse practitioner as defined in R.S. 37:9113.

There is no additional language defining, describing, or further qualifying what is referred to as "current proof of disability from a physician, optometrist, physician assistant [] or nurse practitioner []" in 1303(I)(c). Notably, the Attorney General's advisory opinion acknowledges the term "disability" is not defined with the state Election Code." Pls.' Ex. 181 at 2.

Yet, the Attorney General goes on to opine that in order for a voter with comorbidities to qualify for an absentee ballot, a medical professional must certify "that, in the medical professional's opinion, the existence of the co-morbidity presents an unreasonable risk for that voter to vote in person to the point that it rises to a disability under 1303(I)." *Id.* The medical certification described by the Attorney General's opinion ostensibly requires a medical professional to provide a legal opinion. A medical professional is not the proper conduit for determining whether a comorbidity qualifies as a "disability" under the Louisiana Election Code.

Perhaps understanding the problem this requirement from the Attorney General's opinion creates, Defendants' Opposition Motion twice provides a modified construction of the Attorney General's construction of the statute omitting the "rises to a disability under La. R.S. § 18:1303(I)" language. Defs.' Opp. Mot. at 11–12, 26. Instead, Defendants' Opposition Motion takes the position that the medical professional need only certify that there is a "co-morbidity that, in a medical professional's opinion, places that person at increased risk" from COVID-19. *Id*. at 11–12. It repeats this new construction, claiming that "any person who either has [COVID-19] or has a comorbidity is entitled to an absentee ballot under Louisiana law so long as a medical professional certifies to that fact." *Id.* at 26.[2] Defendants' attempted reframing fails to mitigate the new burdens imposed by the Attorney General's opinion.

---

[2] It is unclear whether this updated construction is the Attorney General's opinion as well, as Defendants' Opposition Motion was signed by the Attorney General's counsel.

**C.  The Louisiana Attorney General's Interpretation of La. R.S. 18:1303(I) Does Not Afford Caretakers of Persons with Comorbidities the Same Access to Absentee Voting**

The State's and Secretary of State's new position does not afford caretaker voters the same access to vote absentee by mail as voters with COVID-19 or comorbidities.  Absent their own diagnosis, caretaker voters would be unable to vote absentee by mail via the Attorney General's interpretation of the Disability Excuse.  *See* Lewis Decl. (detailing Louisiana Comm'r of Elections Sherri Hadskey's testimony affirming that caretaker voters are not able to vote absentee by mail under the Attorney General's interpretation in the absence of their own underlying comorbidity). This position leaves caretaker voters like Plaintiff Jennifer Harding—who is responsible for the care of her elderly and at-risk parents and grandmother—to choose between the safety and health of those they love in their charge and the exercise of their own fundamental right to vote. Defendants would require that caretaker voters vote in person only and thereby force them to risk contracting COVID-19 and bringing it home to those in their care.

**D.  The Louisiana Attorney General's Interpretation of La. R.S. 18:1303(I) is a Per Se Violation of Federal Voting Laws Intended to Protect Voters with Disabilities**

Notwithstanding burdens imposed on voters by the medical certification requirement of the Disability Excuse, the Attorney General's advisory opinion's interpretation of La. R.S. 18:1303(I) is a per se violation of the Voting Accessibility for the Elderly and Handicapped Act of 1984 (VAEHA).  52 U.S.C. §§ 20101-20107.  The VAEHA was passed by Congress in 1984 to "promote the fundamental right to vote by improving access for handicapped and elderly individuals to registration facilities and polling places for Federal elections."  *Id*.

In addition to requiring that all political subdivisions responsible for conducting elections assure that all polling places for federal elections are accessible to elderly voters and voters with

9

disabilities, the VAEHA also contains provisions intended to make absentee voting more accessible.[3]  In particular, under 52 U.S.C. § 20104(b) of the VAEHA:

> No notarization or medical certification shall be required of a handicapped voter with respect to an absentee ballot or an application for such ballot, except that medical certification may be required when the certification establishes eligibility, under State law—
>    (1) to automatically receive an application or a ballot on a continuing basis; or
>    (2) to apply for an absentee ballot after the deadline has passed.

To the extent La. R.S. 18:1303(I) requires a medical certification to enroll in the state's Disability Program, which provides senior citizens who are 65 years and older and voters with disabilities with the option of enrolling in the state's automatic absentee ballot program, it is within the bounds of the VAEHA.  But for all other voters whose application for an absentee ballot will not result in their "automatically receiv[ing] an application or a ballot on a continuing basis" the medical certification requirement violates the VAEHA.  *Id.*

The State's new medical certification requirement plainly involves such voters.  According to the Attorney General's advisory opinion, La. R.S. 18:1303(I), "[t]he provision that governs the eligibility of voters with disabilities to vote absentee by mail" applies to (a) "a voter who is diagnosed with COVID-19 or is subject to a quarantine order while awaiting a COVID-19 diagnosis" and (b) any voter with an underlying health condition known to be a comorbidity for COVID-19."  Pls.' Ex. 181. It conditions the eligibility for absentee voting for these two categories of voters on a medical certification.  The Attorney General's opinion does not indicate that the medical certification requirement will only apply to those voters who enroll in the Disability

---

[3] The legislative history of VAEHA expressly states that the law is intended to make absentee ballot available to those unable to travel to a polling site and that this provision "negate[d] those State laws which require certification of disability as a prerequisite to voting absentee." *Equal Access to Voting for Elderly and Disabled Persons, Hearing on H.R. 1250 Before the Comm. on House Admin.,* 98th Cong. 12 (1983) (statement of Rep. Hamilton Fish, Jr., primary bill sponsor).

Program's automatic absentee option nor that the State endorses or considers the implications of the voters whose disability is tied to the duration of the pandemic enrolling for the automatic option for unlimited future elections.

Despite specifically recognizing that comorbidities are "medical conditions that may prevent or prohibit a person from voting in person," the Attorney General's interpretation of La. R.S. 18:1303(I) and requirement of additional medical documentation for voters seeking request an absentee ballot through use of the Disability Excuse is a per se violation of VAEHA.

## III. RATIONALE BASIS REVIEW DOES NOT APPLY TO BURDENS PLACED ON VOTERS WITH COMORBIDITIES DURING THE PANDEMIC

Defendants' "failure to provide any accommodation for pandemic-affected voters is state action" that constitutes an absolute prohibition on Plaintiffs' right to vote. Written Reasons for Ruling at 10, *Harding v. Edwards*, 3:20-cv-00495 (M.D. La. Sept. 7, 2020), ECF No. 73. For this reason, strict scrutiny, and not rational basis review, should apply.

Contrary to the State's and Secretary of State's assertions, Plaintiffs' case is factually distinguishable from both *McDonald Bd. of Elec. Comm'rs of Chicago* and *Texas Democratic Party v. Abbott*, and neither should control the outcome here. 394 U.S. 802 (1969); 961 F.3d 389 (5th Cir. 2020). In both cases the Court's conclusion that rational basis review should apply was based on the premise that the case did not concern an "absolute prohibition" on voting. *See McDonald*, 394 U.S. at 810; *Texas Democratic Party*, 961 F.3d at 404. But what Defendants fail to highlight is that plaintiffs in both *Texas Democratic Party* and *McDonald* faced different burdens than the ones facing the narrow group of voters at issue here, voters with comorbidities at risk of serious illness or death from COVID-19.

In *Texas Democratic Party*, plaintiffs sought to enjoin a statute that allowed voters aged sixty-five and older to vote absentee. *Texas Democratic Party v. Abbott*, 2020 WL 2541971, at

*2 (W.D. Tex. May 19, 2020); Tex. Elec. Code § 82.003. The claims brought by plaintiffs focused on the age-based discrimination of that statute and whether the inability to vote by mail during the pandemic infringed on their right to vote. *Texas Democratic Party*, 961 F.3d 389, 402 (5th Cir. 2020).

Practically, this meant that plaintiffs were requesting that *all* voters, not only those under sixty-five, be permitted to vote by mail. *Texas Democratic Party*, 2020 WL 2541971, at *2. The Fifth Circuit ultimately concluded that rational basis applied for two reasons: (1) age is not a protected class, so distinctions based on age do not receive heightened scrutiny, and (2) plaintiffs were not absolutely prohibited from voting because voters under 65 could vote in person. *Texas Democratic Party*, 961 F.3d 389, 402, 404-06 (5th Cir. 2020). In so doing, the Fifth Circuit only considered whether voters under 65 as a *general group* were absolutely prohibited from voting, a group that notably included "able-bodied, young voters[.]" *Id*. at 395-96. The Court concluded that such voters did have an alternative: they could vote in person.

Here, the question this Court must determine is whether the burdens on voting faced by a far narrower group of persons who do not have an alternative means of voting: voters with comorbidities who face a severe risk of serious illness or death if they are exposed to COVID-19 at a polling place. Denying such voters the right to vote absentee — constitutes an "absolute prohibition" on their right to vote. For that reason, *Texas Democratic Party* should not be outcome determinative of whether this Court finds an absolute prohibition on voting for the voters with comorbidities, including Plaintiffs.

*McDonald* is also distinguishable. Aside from the fact that the case does not deal with voting during a global, deadly pandemic, the plaintiffs in *McDonald* were unsentenced inmates awaiting trial who sued the State of Illinois claiming it was unconstitutional to be excluded from

12

the state's absentee ballot statute. *McDonald*, 394 U.S. at 804-05. The *McDonald* court found

that even if excluded from the absentee voting statute, the inmates may well have had an alternative

way to vote—namely polling booths in the jail, guarded transportation to the polls, or temporary

reductions in bail to allow some inmates to get to the polls on their own. *Id*. at 808 n.6. For this

reason, the court viewed voting by mail as something that was merely "convenient" and therefore

its denial was only subject to rational basis review. *Id*. at 811.

The case at hand is not about "convenience" as it was determined to be for the *McDonald*

plaintiffs. Plaintiffs do not seek to vote absentee by mail because it is simply less work than going

to the polls on Election Day. They seek to vote absentee by mail because voting in person during

a pandemic with their underlying health conditions puts them at heightened risk of serious illness

or death. And regardless of the precautions Plaintiffs would take at the polls to protect themselves,

voters with comorbidities cannot be sure that their fellow voters will take the same precautions.

*See, e.g.*, Tr. 29:23-10:6.

This is especially true in light of the fact that Secretary of State Ardoin recently stated he

"cannot make mask-wearing a pre-condition to voting at a polling place." Press Release, Office

of the Secretary of State, Statement by Secretary Kyle Ardoin on Administration of Louisiana's

November and December Elections (Sept. 2, 2020), https://www.sos.la.gov/OurOffice/

PublishedDocuments/09022020ArdoinStatement2020FallElections.pdf. Worse yet, as Brandon

Abadie, Administrator of Election for East Baton Rouge Parish, noted in testimony to this Court,

social distancing was already "tough" for poll workers to maintain at polling sites during the July

and August elections and, indeed, was not universally maintained due to the tight configurations

of polling sites, the necessity for voters to physically present a photo ID to commissioners to

confirm their identity, and the difficulties presented by trying to communicate through a mask

causing them protocols.  *Id*. It is easy to imagine the issues with social distancing that will arise when many multiples of people vote in November. [4]

If Plaintiffs with their underlying comorbidities are required to enter a confined space where mask-wearing is not mandated, these voters will be at a substantial risk of serious illness or death. Pls.' Ex. 32, Decl. of Dr. Arthur L. Reingold.  According to a July 2020 CDC report, 83% of those dying of COVID-19 under 65 had an underlying medical condition.  *Id*.  Although Defendants continuously downplay the very real dangers faced by voters this fall—and do so despite nearly 190,000 Americans dead and counting— the virus remains an imminent threat to the lives of Plaintiffs.  *Coronavirus in the U.S.: Latest Map and Case Count,* N.Y. TIMES, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html  (last  visited  Sept.  9, 2020).  Louisiana continues to have the highest per capita COVID-19 case rate in the U.S.  *Id*.

Even the State's own expert, Dr. Barie, accepted that the difference between the Mortality rate in Louisiana and the national mortality rate (a difference of 9%) is significant.  Declaration of Morgan Lewis ("Lewis Decl.").[5]  Moreover, Dr. Barie further relied on evidence demonstrating that the mortality rate for COVID-19 has remained stable since late July, without any end in sight.

---

[4] Nor did Defendants' Expert Dr. Kidd provide any cogent evidence that voting is a safe activity during the pandemic. His testimony was clearly limited to whether voting caused an overall spike or surge in overall COVID-19 cases in a state, not whether voting caused an *incremental* increase in the number of such cases.  Lewis Decl..

[5] Plaintiffs have requested a transcript of the September 8-9, 2020 hearing on the preliminary injunction, however, as of this writing they have only received a partial version, which does not include the testimony of several witnesses.  In lieu of a complete transcript, references to hearing testimony is provided by citation to the Declaration of Morgan Lewis, counsel to the Plaintiffs, filed concurrently with this brief.



Louisiana    COVID-19    Statistics,    *Mortality    Rate    Over    Time*,
https://covidusa.net/?state=Louisiana (last visited Sept. 10, 2020) (presented during the testimony
of State's expert, Dr. Philip Barie, on Sept. 9, 2020).  Indeed, Dr. Barie acknowledged that the
mortality rate has lingered above 3% without pause since late July:



*Id.* (cropped for legibility).

In sum, unlike in the cases discussed above, Plaintiffs here – a voter with a comorbidity
(Ms. Pogue) and a voter who is a caretaker for elderly relatives with comorbidities (Ms. Harding)
– do in fact face an "absolute prohibition" on the fundamental right to vote.  *See Texas Democratic
Party*, 961 F.3d at 404. Defendants' maintenance of the absentee excuse requirement without any
modification leaves Plaintiffs with *no alternative means* of voting safely in the November and
December elections, rendering the burden severe.  *See, e.g., Belitskus v. Pizzingrilli*, 343 F.3d 632,

644 (3d Cir. 2003) ("[I]f a ballot access scheme, such as the one here, imposes a mandatory filing fee but fails to provide an alternative means of ballot access, such as signature collection, that scheme constitutes a severe burden on the rights of indigent candidates and their supporters."). And because the burden on the fundamental right to vote is severe, the Plaintiffs' constitutional claims must be reviewed under strict scrutiny, meaning they "must be narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (internal quotations omitted).

#### IV.    THE JULY AND AUGUST 2020 EMERGENCY ELECTION PLAN'S PROVISIONS SHOULD BE EXTENDED TO THE NOVEMBER AND DECEMBER 2020 ELECTIONS

The State has refused to extend multiple protective provisions that were in effect under the Emergency Plan for Louisiana's July and August 2020 elections ("July/August Emergency Plan") to the upcoming November and December 2020 elections.

In response to the risks of COVID-19 transmission at polling sites, the July/August Emergency Plan expanded absentee ballot eligibility for five categories of voters, including voters who were: (i) "[a]t a higher risk of severe illness from COVID-19 due to serious underlying medical conditions as identified by the Centers for Disease Control and Prevention"; (ii) "[s]ubject to a medically necessary quarantine or isolation order as a result of COVID-19"; (iii) "[a]dvised by a health provider to self-quarantine due to COVID-19 concerns"; (iv) "[e]xperiencing symptoms of COVID-19 and seeking medical diagnosis"; or (v) "[c]aring for an identified individual who is subject to medically necessary quarantine or isolation order as a result of COVID-19 or who has been advised by a health care provider to self-quarantine due to COVID-19 concerns." Pls.' Ex. 22, Secretary of State Emergency Election Plan for the July 11, 2020 Presidential Preference Primary and August 15, 2020 Municipal General Elections in the State of Louisiana.

Voters requesting an absentee ballot under one of these COVID-19-related excuses were only required to attest to their status on their application, without a requirement to submit supplemental documentation. Tr. 15:12-17:1. Despite the ongoing nature of the pandemic in Louisiana, and despite expectations that upcoming voter turnout will be significantly higher than in July and August, Defendants have not provided this set of COVID-19 excuses for November and December. *See, e.g.*, Joint Ex. 15, Declaration of Sherri Wharton Hadskey, Louisiana Commissioner of Elections, at ¶ 17(k).

Under the July/August Emergency Plan, Defendants also increased the early voting period from seven to 13 days, reducing the number of people voting and present at early voting sites on any given day during the early voting period, and more significantly, on Election Day. Pls.' Ex. 22. Despite the anticipated considerable increase in voter turnout, Defendants have reduced the number of early voting days down to one week for November and December, which together with the failure to expand absentee voting will result in increased numbers of voters convening at the polls on Election Day.

Defendants the State and Secretary of State claim that extending the measures from the Emergency Plan is impossible. They allege, for example, that Plaintiffs seek to enjoin the absentee excuse requirement completely so that "all Louisiana voters be allowed to vote absentee by mail in the November 3, 2020 and December 5, 2020 elections." Joint Ex. 15, Decl. of Sherri Wharton Hadskey, Louisiana Comm'r of Elections, at ¶¶ 30-31. This does not describe the narrow remedy that Plaintiffs are requesting for voters with comorbidities and voters who are caretakers for individuals with comorbidities. Indeed, data from the prior elections demonstrates that extending the COVID-19-related excuses from July and August would result in a manageable fraction of anticipated absentee ballot applications and submissions. For example, in the July election,

COVID-19 absentee ballot applications constituted only 2% of overall absentee ballot excuses,[6] hardly the "impossible" result that Defendants assert.  Pls.' Ex. 179, November and December 2020 Election Possible Emergency Election Plan, Presented by Louisiana Secretary of State Kyle Ardoin; Joint Ex. 15 ¶¶ 30-3.

Defendants the State and Secretary of State argue that the State is not administratively equipped to establish new voting requirements at this point. However, Defendants are proceeding to do exactly that, implementing new voting procedures, paperwork, and guidance rather than maintaining the status quo from the July election and August election, which took place less than a month ago.  *See, e.g.*, Tr. 7:10-13.  Specifically, based on the Attorney General's opinion, the Secretary of State's office has indicated that it is in the process of implementing procedures and forms in line with the Attorney General's September 1 advisory opinion. Joint Ex. 34, Statement by Secretary Kyle Ardoin on Administration of Louisiana's November and December Elections (Sept. 2, 2020); Tr. 8:5-9; 9:8-10:2; 13:4-7.

As Louisiana Commissioner of Elections Hadskey testified, this new interpretation of disability eligibility would exclude multiple categories of voters who were previously eligible to vote via a COVID-19 excuse in July and August, including voters who are caretakers of individuals with COVID-19 comorbidities and voters who live with other people who have comorbidities. Tr. 8:7-17.  While Commissioner Hadskey confirmed that a physician's certificate will be mandatory for voters relying on disability eligibility for an absentee ballot due to COVID-19, she admitted that the State is still in the process of determining how to create new application and corresponding guidance for implementation, and noted that the completed forms could take weeks to be prepared.

---

[6] Pls.' Ex. 179, November and December 2020 Election Possible Emergency Election Plan, Presented by Louisiana Secretary of State Kyle Ardoin.

Tr. 9:8-10:2; 11:3-18; 44:24-45:9.  She also admitted that in the interim, the State does not have any guidance for voters with comorbidities who attempt to use the existing Disabled Application pursuant to the A.G.'s advisory opinion.    While the forms and procedures for use by voters with comorbidities who apply for an absentee ballot through the disability excuse--per the A.G.'s opinion—are being prepares, interim clear guidance could not be provided regarding the steps necessary to obtain a physician's certificate for COVID-19 purposes.  Tr. 10:3-20; 13:4-11.

This lack of clarity highlights the unnecessary confusion and administrative burden that rolling back the provisions of the July/August Emergency Plan and implementing the Attorney General's disability interpretation in its place will exacerbate, underscored by Commissioner Hadskey's testimony that she could not confirm whether the Secretary of State's office would affirmatively notify voters who used a COVID-19 excuse in July or August that there has been a change.  Tr. 31:16-21.  Extending the same eligibility rules and procedures that were already in place for the July and August elections, or comparable modifications, would mitigate potential voter confusion and streamline electoral planning by maintaining the status quo that was most recently implemented only weeks ago in the August election. *See Republican National Committee v. Common Cause Rhode Island*, No. 20A28, __U.S.__ S.Ct., 2020 WL 4680151, at *1 (U.S. Aug. 13, 2020) (concluding that "[t]he status quo is one in which the challenged requirement has not been in effect, given the rules used in [the state]'s last election, and many [of the state's] voters may well hold that belief.").

There is no dispute that the risks of in-person transmission of COVID-19 will still be in effect in November and December, making it unduly burdensome for voters most vulnerable to severe illness and death from COVID-19 to exercise their right to vote.  *See* Dkt. No. 82, Supp. Report of Dr. Arthur L. Reingold: Response to Dr. Barie at ¶ 2. The State has narrowed the

categories of voters eligible to vote absentee and reduced the number of early voting days while at the same time preparing for significantly higher turnout, forcing voters to either accept fully avoidable risk of transmission and infection or forego their fundamental right to vote. The solution here is straightforward: the State should maintain the status quo established during the most recent elections and extend the July/August Emergency Plan to the November and December elections.

### CONCLUSION

The COVID-19 pandemic has remained a constant in the lives of Louisianans for the majority of 2020 and remains without a known end.  In the midst of a crisis that has led to the deaths of thousands of Louisianans, the State has failed to implement any measure to allow voters with COVID-19 or its comorbidities to vote without risk of virus transmission or exposure at polling sites in November and December. Indeed, "every death matters" when determining the threat this virus poses to the most vulnerable of Louisiana's voters.  Lewis Decl.

The Attorney General's recent re-interpretation of Louisiana's Disability Excuse during the pandemic neither passes constitutional muster nor provides an adequate solution for voters at the highest risk for COVID-19 to exercise their right to vote.  The extension of the absentee voting qualifications and extended early voting days afforded under the July/August Emergency Election Plan would provide an administrable and constitutionally sound mechanism to protect both the lives and voting rights of Louisianans.

DATED this 10th day of September 2020.    Respectfully submitted,


Robert  D.  Fram*  
Morgan Lewis*  
Joshua González*  
Covington & Burling LLP  
One Front Street  
San Francisco, CA 94111-5356  
Tel: (415) 591-6000  
rfram@cov.com  
melewis@cov.com  
jgonzalez@cov.com  


John Fraser*  
Covington & Burling LLP  
The New York Times Building  
620 Eighth Avenue  
New York, NY 10018-1405  
Tel: (212) 841-1000  
jfraser@cov.com  


Frederic M. Levy*  
Scott Garfing*  
Covington & Burling LLP  
One City Center  
850 Tenth Street, NW  
Washington, D.C. 20001  
Tel: (202) 662-5154  
flevy@cov.com  
sgarfing@cov.com  

    /s/ Ronald L. Wilson  
    Ronald L. Wilson, (LSBN 13575)  
    701 Poydras Street, Suite 4100  
    New Orleans, LA 70139  
    Tel.: (504) 525-4361  
    cabral2@aol.com  


    John Z. Morris*  
    Steven Lance*  
    Victoria Wenger*  
    NAACP Legal Defense &  
      Educational Fund, Inc.  
    40 Rector Street, 5th Floor  
    New York, NY 10006  
    Tel.: (212) 965-2200  
    zmorris@naacpldf.org  
    slance@naacpldf.org  
    vwenger@naacpldf.org  


    Catherine Meza*  
    NAACP Legal Defense &  
      Educational Fund, Inc.  
    700 14th Street, NW, Suite 600  
    Washington, D.C. 20005  
    Tel.: (202) 682-1300  
    cmeza@naacpldf.org  


    *Pro Hac Vice*  


    **Attorneys for Plaintiffs**