# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER HARDING, JASMINE POGUE, OMEGA TAYLOR, LOUISIANA STATE CONFERENCE OF THE NAACP, and POWER COALITION FOR EQUITY AND JUSTICE** | **CIVIL ACTION NUMBER 3:20-cv-00495**<br><br>**DISTRICT JUDGE SHELLY D. DICK** |
| **VERSUS** | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |
| **JOHN BEL EDWARDS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF LOUISIANA, AND KYLE ARDOIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF LOUISIANA** | |

**************************************************************************

## GOVERNOR JOHN BEL EDWARDS' POST-HEARING BRIEF

NOW INTO COURT, though undersigned counsel, comes Defendant, **JOHN BEL EDWARDS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF LOUISIANA**, who hereby submits this Post-Hearing Brief in accordance with the Court's order [Docket Entry 77].

**I.   The Secretary of State and the Attorney General Have Provided No State Interest for Altering the Status Quo Provided by the July and August Election Plans**

The actions of the Secretary of State in his preparations for the November and December elections upset the balance that was struck just months ago by the Secretary, the Governor, and the Legislature. That plan for the July/August elections created an approach to Louisiana's elections that considered and mitigated risks presented by the voting process during the COVID-19 crisis. The State's Emergency Election Plan for the July and August Elections, which expanded voters' access to absentee balloting and early voting during the pandemic, and which this very Court found

to present no constitutional injuries to plaintiffs, protected the integrity of the election while maintaining voters' safety from unreasonable risk of harm and exposure to the virus. Now, however, the State of Louisiana heads into an election season without any accommodations for pandemic-affected voters. Louisiana is the only state in the country that is reversing course from the previously agreed-upon and well-advised mitigative measures. Such an about-face constitutes state action that would deprive voters of provisions that would protect their rights in the context of a nationwide pandemic, in the state with the highest per-capita total infection rate in the country. The Secretary of State and the Attorney General have pointed to no evidence of a change in circumstances—and indeed, the Governor submits that they can find no such evidence—that would suggest that Louisiana voters face less risk in November and December than they did in July and August.

## II.     The Matter at Hand is not controlled by *Texas Democratic Party v. Abbott*

The Secretary of State and Attorney General have argued to this Court that the Fifth Circuit's reversal of the District Court in *Texas Democratic Party v. Abbott* should dictate the result here. However, *Abbott* is clearly distinguishable from this case several significant ways. First, *Abbott* was a case that arose on the eve of an election.[1] Here there is no such issue, as election day is more than seven weeks away. Nonetheless, the Secretary and the Attorney General cry foul and raise the *Purcell*[2] doctrine, claiming that the measures for the November and December elections cannot be challenged at so late a date. But the supposed problem of timing and lack of preparation here is one of the Secretary of State's own creation. It was, after all, the Secretary himself who waited until August 17, 2020, to submit a plan to the Governor and to the Legislature.[3]

---

[1] *Texas Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020).
[2] 549 U.S. 1 (2006).
[3] The Secretary's delay, then leading to a claim of lack of time, puts into practice the Fifth Circuit's admonition in *Abbott* concerning the "chutzpah doctrine," noting that a court should not countenance consideration for "a young

Here, this crisis was entirely caused by the Secretary's own failure to submit a plan that would meet constitutional standards and protect the health and safety of voters, while at the same time maintaining the security of the election. The evidence in this case makes it even more difficult to accept the Secretary's claim of lack of time and preparation. The Elections Commissioner, Sherri Hadskey, testified that the Secretary of State's office began preparations for the November elections in February and understood the elections would be affected by COVID-19 since mid-March. To claim now, after successfully conducting an election just one month ago under the same regime sought by the Governor here, that the burdens of time and training are insurmountable is simply not credible. As this Court has previously noted, the Secretary has made public admissions to the effect that he will rely on this Court to decide the emergency processes that the upcoming elections will require. Without the intervention of this Court, the health and safety of those most at risk of contracting COVID-19, who are forced to choose between voting in person or not voting at all, will be compromised.

In further contrast with *Abbott*, the Governor is not seeking a universal expansion of absentee by mail voting. While the plaintiffs in this matter do seek expanded "no excuse" mail-in voting, even they agree that a re-instatement of the State's election plan for July and August would meet the minimal constitutional standards. *Abbott* was decided in light of a court-ordered voting regime that dramatically *expanded* voting rights, even though "local officials [were] actively shaping their response to changing facts on the ground."[4] Here, the Court would not be creating a new plan out of whole cloth or even substituting its judgment for that of the Legislature. The Secretary's action deprived the Legislature and the Governor of approving a plan that was deemed

---

man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan." *Id.,* at 412; *Id.*, n. 50, quoting *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 937 n.5.

[4] *Id.* at 412, quoting *S. Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, at 1614 (2020) (Roberts, C.J., concurring).

acceptable just several months ago, without any evidence of fraud or challenges to election security. It should further be noted that, as Commissioner Hadskey testified, the reason articulated by the Secretary for his failure to not put forth the July and August election plans was not that it was impossible to pull off, but rather it was that he "thought" it would not pass. That ill-advised assumption, depriving the Governor and Legislature of the opportunity to approve a constitutional plan, puts this dilemma squarely before this Court. Unlike in *Abbott*, where the Court created a whole new voting system of voting by mail not contemplated by the State, the Governor here is asking the Court to reinstate the status quo regime, approved by the Governor and a majority of the Legislature in response to this very same pandemic just months ago.

Lastly, the *Abbott* decision discussed at length the state interest advanced by the state of Texas. The Secretary and the Attorney General here have made no similar effort to identify any state interest advanced by reversing accommodations made in July and August for those affected by COVID-19. This reversal would force Louisiana voters to violate CDC guidance to vote. The *only reasonable state interest to be advanced* here should be to protect the health and safety of those affected by COVID-19 as well as the fellow voters and commissioners who would be put at risk by having infectious voters show up at the polls on election day.

### III. The Attorney General's Plan Requires Extra Burden and Expense, Contrary to His Own Expert's Advice

On the eve of trial of this matter, and without any change in law, the Attorney General issued Opinion 20-0104, which provided a new interpretation of the disability excuse in *La. R.S. 18:1303(I)*. The Secretary of State and the Attorney General argue that voters could obtain a doctor's certification of disability to be able to vote absentee, with counsel for the Attorney General going so far as to suggest that voters could avail themselves of their local emergency rooms to

obtain such a certification.[5] This line of argument is further based upon a misguided attempt by the Attorney General to redefine the term "disability" to suit his purposes.[6] Aside from further burdening the medical system of this state by co-opting doctors into the election process—when their time at this very moment is a precious resource indeed—this approach would risk cross-contamination of medical facilities and the general public by unwisely encouraging members of the public to seek certifications from front-line personnel in hospitals and medical facilities. The Secretary of State's proposed implementation of the guidance in the Attorney General's opinion regarding the medical disability excuse requirement would constitute an unreasonable, unnecessary, and potentially expensive extra burden to voters who are simply trying to exercise their fundamental right to vote.

Moreover, the Attorney General's and Secretary of State's arguments were contradicted by testimony from their own (and only medical) expert witness. Under cross-examination, Dr. Philip Barie was asked to engage in a hypothetical patient treatment scenario based on his clinical experience and expertise in treating patients during the COVID-19 pandemic. When presented with a patient whose symptoms included the tell-tale symptoms of COVID-19 including a cough, fever, and a sore throat, Dr. Barie stated that he would immediately suspect COVID-19 and would request a COVID-19 diagnostic test be administered to this patient. From the moment of the first

---

[5] This statement, made during the hearing on September 8, 2020, was likely based on counsel's misconception of hospitals' emergency duties, which include screening, treatment, and stabilization, not certification letters for absentee voting. *See* Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. §1395dd, *et seq.* Further, it does not cure the fundamental problem *that one would still need to pay to see a health care provider to vote safely.* Even without the expense, this would be an unreasonable burden on voters. But with the financial obligation, the Attorney General is essentially creating a modern-day poll tax.

[6] Secretary of State and Attorney General's Joint Exhibit 1. It was stated several times by witnesses, especially Commissioner Hadskey, that the Attorney General's opinion expanded early voting to a class of individuals. Of course, this is legally and factually incorrect. The Attorney General does not have the authority to expand voting rights to any Louisiana voter via an Attorney General's opinion and, in issuing the opinion referenced by Commissioner Hadskey, merely gave his non-binding opinion as to how the disability exception in *La. R.S. 18:1303(I)* may be applicable. The faulty logic of this opinion demonstrates nothing more than that neither the Secretary or the Attorney General can articulate a genuine state interest of why people that are symptomatic, under quarantine, or at-risk because of co-morbidities should be forced to vote in person in defiance of CDC guidelines.

warning signs of symptoms, Dr. Barie stated that he would advise his patient to isolate while awaiting test results, as well as isolate if the test came back positive, for a period of at least fourteen days.[7] Dr. Barie's recommendations and advice to his hypothetical patient are in line with guidance from the CDC, which the Governor has cited in his Response to Plaintiffs' Motion for Preliminary Injunction and Request for Expedited Consideration [Rec. Doc. 49].[8] Further, in a critical admission, Dr. Barie stated he would tell this symptomatic patient to not visit the grocery store or *to vote in person*. Thus, what would simply be sound (and uncontradicted) medical advice would force asymptomatic individuals in Louisiana to either follow a doctor's orders and isolate – or to vote in person in contravention of doctor's orders. In further keeping with the CDC guidance, Dr. Barie stated that he would advise a patient to quarantine for at least fourteen days if the patient had been in close contact with someone who was positively diagnosed with COVID-19. Once again, this individual would have to choose between following a doctor's orders (and CDC guidance) or voting in person. Commissioner of Elections Hadskey's testimony further evidenced this unconscionable dilemma by stating that, unless a voter has a determination of disability, or meets one of the other criteria in the Election Code for absentee excuse, that voter must choose between following CDC guidelines or voting. It is unreasonable and irrational to force such a choice upon voters to exercise their constitutional right to vote.

Dr. Barie also gutted the Attorney General's newfound disability argument. When Dr. Barie was asked if he would certify as disabled a patient who was concerned about their own infectiousness during an advised quarantine period, Dr. Barie stated that he would not be able to

---

[7] Dr. Barie stated that just one negative test would not change this isolation instruction, and that it would only change upon a second negative test.
[8] Specifically, Governor's Exhibits 6, 7, and 8, all documents published by the Centers for Disease Control.

certify such, as he cannot consider that patient disabled.[9] Lastly, and perhaps most tellingly, Dr. Barie admitted that were he himself standing behind a voter in line at the polls who was showing the tell-tale symptoms of COVID-19, he would be concerned for his own health and safety. Fortunately, Dr. Barie is at little risk for this happening to him, as New York would allow this symptomatic individual to vote by mail. The same would have been true of Louisiana in July or August. However, without intervention by this Court, every voter in Louisiana faces the possibility of risk that Dr. Barie stated would cause him concern.

## CONCLUSION

It is unfortunate that the Secretary and the Attorney General have caused the State of Louisiana, while leading the rest of the country in per capita cases, to be potentially so far behind in protecting the health and safety of voters for this upcoming fall election. The stakes in this dispute could not be higher. Voters should not have to risk their lives to cast their ballots, nor should they be required to put the lives of others at risk in order to cast their ballots. With an adequate plan, they need not do either. The July/August election plan met the constitutional standards because it complied with the CDC guidance for protecting health and safety during COVID-19. As this Court knows well, the July/August plan did not meet all of the wishes of the plaintiffs, but it was constitutionally sufficient. While perhaps our better angels would hope that we would aim higher than sufficiency, the July/August plan would at the very least protect the most vulnerable amongst us while at the same time giving confidence that all who are entitled to

---

[9] It is particularly disingenuous for the Attorney General to recommend potential voters to claim a disability exception for purposes of absentee by mail voting, especially when he argues, beginning at page 15 in his brief [Rec. Doc. 52], that "[p]laintiffs do not have ADA-recognized disabilities, do not meet the essential eligibility requirements, and are not excluded or discriminated against because of their alleged 'disabilities.'" Given that one part of the Attorney General's brief argues that plaintiffs should seek a disability determination for purposes of voting and another part of the brief states definitively that the same plaintiffs are not disabled, one wonders what these plaintiffs, or any other voters, are to do with such conflicting guidance from the chief legal officer of the state. As noted in the Governor's original opposition, this Attorney General's opinion is an invitation for (at best) uncertainty and (at worst, though likely) fraud.

vote can do so safely. There is no state interest identified by the Secretary of State or Attorney General for altering from this plan. It should remain in place for this critical election.

**WHEREFORE**, Governor John Bel Edwards respectfully requests this Court to grant Plaintiffs' Motion for Preliminary Injunction and order the Secretary of State to implement the same measures contained in the July/August 2020 emergency election plan for the November 3, 2020 and December 5, 2020 elections.

By attorneys:

*s/Matthew F. Block*

**MATTHEW F. BLOCK, T.A.** (Bar Roll #25577)
JOHN C. WALSH (Bar Roll #38930)
Office of the Governor
Post Office Box 94004
Baton Rouge, LA 70804-9004
(225) 342-7015
(225) 208-1524 (fax)
matthew.block@la.gov
john.walsh@la.gov

***Attorneys for Defendant, John Bel Edwards, in his official capacity as Governor of Louisiana***

**CERTIFICATE**

I hereby certify that a copy of the above and foregoing pleading has been filed this 10th day of September, 2020 with the Clerk using the Court's CM/ECF system which will provide notice to all counsel of record.

*s/Matthew F. Block*

**MATTHEW F. BLOCK**